*In re* PAUL RENDE (The People of the State of Illinois, Plaintiff-Appellee, v. Paul Rende, Defendant-Appellant).

First District (5th Division)   No. 1—91—1250

Opinion filed March 19, 1993.

George P. Lynch, of Chicago, for appellant.

Jack O'Malley State's Attorney, of Chicago (Renee Goldfarb, Theodore Burtzos, Margaret J. Faustmann, and Robin L. Kerensk, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court.

This appeal challenges the asserted power of a Cook County grand jury to issue a subpoena to compel an appearance in a lineup. In March 1991, appellant was served with a subpoena commanding him to appear before a grand jury of the circuit court of Cook County to testify and to "[s]tand lineup for identification purposes."

In requesting the grand jury to issue this subpoena, the State's Attorney made the following unsworn statement to that body:

"I am an Assistant State's Attorney from the Organized Crime Unit here today on March 195. [*sic*] And I am here today requesting three subpoenas.***

The first one is for an individual to appear before this body some time next week and ordered to stand a lineup. We have information that he may be a subject of—target of the investigation which, as you may or may not recall, a burglary investigation

that stretches as far as Arlington Heights north and as far south as, I believe, Orland Park. He has not been arrested. We don't have enough information yet to approve yet, but we are asking that he stand a lineup. At this point he's refused. So, we are going to bring him in and ask he be ordered to stand a lineup. That is Mr. Paul Rende."

No arrest warrant was issued for the defendant, and no finding of probable cause was made or elicited.

Defendant thereupon filed a motion to quash the subpoena which was orally argued in the circuit court in April 1991. The motion and argument challenged the authority of the grand jury to direct him to attend a lineup for identification without a preliminary finding of probable cause. Based upon then-existing precedents, defendant's motion to quash was denied and defendant was ordered to appear for lineup.

Over defendant's specific objection, the trial court further ruled that the lineup could be held outside of the "confines and presence" of the grand jury but provided that defendant had the right to the presence of his counsel at that lineup. Defendant thereupon requested a contempt finding against him to permit an immediate appeal. The trial court complied by entering a finding of contempt against the defendant and thereafter assessing a fine of $500 against him with execution stayed during the pendency of the appeal.

On appeal, defendant urges that a grand jury subpoena compelling his appearance at a lineup violated his rights under the fourth and fifth amendments of the United States Constitution as well as his rights under article 1, section 6, of the Constitution of the State of Illinois. In addition defendant contends that compelling appearance at a lineup is beyond the scope of the statutorily granted powers of the grand jury pursuant to article 112 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 112—1 et seq.). Lastly, defendant argues that the issuance of a subpoena to compel a person to participate in a grand jury lineup before indictment violates Supreme Court Rules 411 and 413 (134 Ill. 2d Rules 411, 413).

We begin our discussion of defendant's constitutional arguments with the United States Supreme Court's decision in *United States v. Dionisio* (1973), 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764. There the Court held that a grand jury subpoena for voice exemplars and other relatively noninvasive physical evidence does not encroach upon rights which are protected under the fourth amendment. In its analysis, quoting from the decision of the Second Circuit Court of Appeals in *United States v. Doe (Schwartz)* (2d Cir. 1972), 457 F.2d 895, 898-99, the court in *Dionisio* stated:

" 'There is no basis for constructing a wall of privacy against the grand jury which does not exist in casual contacts with strangers. Hence, no intrusion into an individual's privacy results from compelled execution of handwriting or voice exemplars; nothing is being exposed to the grand jury that has not previously been exposed to the public at large.' " *Dionisio*, 410 U.S. at 14, 35 L. Ed. 2d at 79, 93 S. Ct. at 772.

Accord *United States v. Mara* (1973), 410 U.S. 19, 35 L. Ed. 2d 99, 93 S. Ct. 774.

Whether the rationale of *Dionisio* should be applied to a lineup appearance has been the subject of some debate among the Federal circuits. In *In re Melvin* (1st Cir. 1977), 550 F.2d 674, the first circuit explicitly held that the rationale of *Dionisio* applied to lineup appearances just as to voice exemplars, stating:

"The Court's rationale in finding that the 'seizure' of a 'person' necessary to bring him before the grand jury for the purpose of furnishing a voice exemplar does not implicate the fourth amendment seems controlling in the present context. Appearance at a lineup could take longer and be more distasteful, but it is difficult to see that the procedure is so much more burdensome as to be distinguishable for that reason from the ordered identification procedures accepted in *Dionisio* and *Mara*." 550 F.2d at 676.

Reaching a contrary result, the District of Columbia Circuit Court of Appeals, in the case *In re Kelley* (D.C. 1981), 433 A.2d 704, stated:

"We are unpersuaded by the government's arguments that a lineup appearance involves no greater intrusion than the orders in *Dionisio* and *Mara*. *** A lineup appearance is not simply showing one's face to the public. It involves considerable social stigma and personal risk. It entails the humiliation of standing on a stage under floodlights, removed from counsel, subject to being compelled to speak certain words and perform actions directed by the police, all at considerably more risk of mistake and misidentification than the more scientifically grounded fingerprinting and, to some extent, voiceprinting techniques involved in *Dionisio* and *Mara*." (433 A.2d at 706.)

However, having distinguished between the constitutional ramifications of a lineup appearance and the voice exemplars sought in *Dionisio*, the *Kelley* court abruptly retreated from its constitutional analysis, and proceeded to decide the matter on nonconstitutional grounds by invocation of the court's supervisory powers over the grand jury. Pursuant to those powers the court required only "in summary terms a minimal showing of a legitimate basis for requiring the particular lineup where enforcement of a grand jury directive is before the court." 433 A.2d at 710.

There is far less debate that a compulsory lineup does not violate a person's fifth amendment right against self-incrimination. Since the decisions of the United States Supreme Court in *United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct 1926, in *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, and in *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826, it has been resolved that the privilege against self-incrimination applies only to compulsory communications or testimony. "[C]ompulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate [the fifth amendment]." *Schmerber*, 384 U.S. at 764, 16 L. Ed. 2d at 916, 86 S. Ct. at 1832.

Thus, as is the case with voice and handwriting exemplars, or other attempts to use an individual as a source of physical evidence, compelling a witness to appear in a lineup does not violate his fifth amendment rights even though it enlists that person's will and cooperation. But see dissent of Justice Marshall in *United States v. Mara*, 410 U.S. at 33, 35 L. Ed. 2d at 88, 93 S. Ct. at 782 (Marshall, J., dissenting) ("I cannot accept the notion that the government can compel a man to cooperate affirmatively in securing incriminating evidence when that evidence cannot be obtained without the cooperation of the suspect").

The major issues raised in this appeal have been addressed by the Illinois Supreme Court in the case of *In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381, 604 N.E.2d 929 (hereinafter referred to as *In re May*), which was decided after the contempt judgment was entered in this cause by the able trial judge.

Under its holding, the court in *In re May* treats a grand jury subpoena compelling an appearance in a lineup as being similar to a subpoena requiring production of fingerprints and palm prints. Each is characterized as "physical evidence of a noninvasive nature." *In re May*, 152 Ill. 2d at 393.

Thus our supreme court apparently agrees with the decision in *In re Melvin*, that pursuant to *United States v. Dionisio*, a grand jury subpoena calling for a lineup appearance receives no greater fourth amendment protection than one calling for voice exemplars.

However, in this context our State supreme court invoked the privacy provision under article I, section 6, of the Illinois Constitution, holding that this provision "offers greater [privacy] protection *** than does the Federal Constitution." *In re May*, 152 Ill. 2d at 390.

The privacy provision of our State constitution provides:

"The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable

searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. 1970, art. I, § 6.

*In re May*, 152 Ill. 2d at 390-91.

Pursuant thereto, our supreme court extended the protection of the privacy provision of our State constitution to a grand jury subpoena compelling lineup appearances, stating:

> "A person has a reasonable expectation that his private records will not be exposed to public view. Similarly, a person has a reasonable expectation that he will not be forced to submit to a close scrutiny of his personal characteristics, unless for a valid reason. We believe that the individual's privacy interest in his physical person, as well as his privacy interest in his documents, must be protected." *In re May*, 152 Ill. 2d at 391-92.

■ In balancing the public's interest in a functioning grand jury against the right of an individual to the protection of his privacy, the court in *In re May* contrasted the relatively nonintrusive nature of a lineup with the more intrusive invasion involved in a request for hair or blood samples. The court went on to hold that unlike requests for hair or blood samples, a mandatory lineup does not require a showing of probable cause. But, nonetheless, even where the evidence sought is nonintrusive, the correlative right of privacy would require that the State must show relevance and individualized suspicion:

> "Thus, we hold that some showing of individualized suspicion as well as relevance must be made before physical evidence of a noninvasive nature, such as an in-person appearance in a lineup or fingerprinting, is demanded of a witness. This may be done through affidavit by the State's Attorney." *In re May*, 152 Ill. 2d at 393.

■ While our supreme court has not specified in detail the quantum of proof required to establish the threshold level of relevance and individualized suspicion, it is clear that more is required than was provided here. Here the only representations to justify the issuance of the lineup subpoena were made to the grand jury in an unsworn statement of the prosecutor. That statement identified the crimes being investigated and simply asserted that the prosecutor had "information that he may be a subject of—target of the investigation." This statement does not identify the source of the information nor give any inkling as to its quality or reliability. Nor does the statement positively assert that defendant was a target. It simply states that he "may be a subject of—target." Consequently aside from being unsworn, the statement does not provide sufficient assurance that defendant's appearance at a lineup was not required

as part of a general dragnet rather than on the basis of unique knowledge pertaining to the defendant's involvement in the subject crimes.

Moreover aside from the informational insufficiency of the statement, it was addressed to the grand jury only and not to the court where the subpoena's enforcement was sought. Under the holding in *In re May*, the enforcing court must be persuaded by a showing of relevancy and individualized suspicion. It does not appear to be sufficient simply to provide those facts to the grand jury.

> "Without the necessity of presenting some degree of individualized suspicion *to the court*, it is conceivable that a grand jury investigating a rape allegedly committed by a man of Oriental appearance might subpoena physical evidence from all 50 Asian-American males in the local community none, of whom was suspect for reasons other than his race." (Emphasis added.) *In re May*, 152 Ill. 2d at 393.

This requirement that the demonstration of relevancy and individualized suspicion be made to the court from which enforcement is sought is also consistent with the supervisory requirement in *In re Kelley* (D.C. 1981), 433 A.2d 704, 707, stating:

> "Consequently, to insure that the prosecutor and the grand jury are acting in good faith and not arbitrarily or to harass putative defendants, we hold that a prosecutor seeking judicial enforcement of a grand jury directive to appear in a lineup must, by affidavit of law enforcement officer or a formal representation of an Assistant United States Attorney, make a minimal factual showing sufficient to permit the judge to conclude that there is a reason for the lineup which is consistent with the legitimate function of the grand jury."

See also *In re Grand Jury Proceeding* (3d Cir. 1973), 486 F.2d 85 (government was required to make a preliminary showing of reasonableness to district court before grand jury subpoena for handwriting exemplars would be enforced).

We do not mean to connote that a sworn statement originally made to the grand jury would not suffice if subsequently shown to the trial court. Undoubtedly such a sworn statement would be no different from an affidavit which, under *In re May*, is acceptable. Here, however, in addition to being unsworn and factually insufficient, there is no record that the statement was brought to the trial judge's attention. There is nothing in the record to show that the trial judge examined or was guided by that statement. Accordingly, the order compelling enforcement of this subpoena and the finding of contempt for refusal to comply must be overturned.

■ Defendant's contention, however, that the grand jury is without statutory power to issue a subpoena to compel a lineup

appearance is without merit. Defendant contends that since article 112 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 112—1 *et seq.*), which purports to specify the investigation powers of the grand jury does not specifically provide for lineup appearances, we must conclude that it is without such powers. This contention attempts to circumscribe the investigatory power of the grand jury too narrowly. See *People v. Florendo* (1983), 95 Ill. 2d 155, 158, 447 N.E.2d 282 ("the public also has an interest in maintaining the breadth of the grand jury's power to conduct investigations necessary to ferret out criminal activity").

Defendant's contention predicated upon article 112 was directly addressed and rejected by our supreme court in *In re May*. The court there reasoned that a "statute should not be construed to effect a change in the settled law of the State unless its terms clearly require such a construction." (*In re May*, 152 Ill. 2d at 388.) Based upon this rationale, the court dispositively concluded that section 112—4 "gives the grand jury the right to demand that the person subpoenaed provide evidence within the limitations imposed by constitutional guarantees of individual rights." *In re May*, 152 Ill. 2d at 389.

■ Defendant further contends that the power of the grand jury to order a lineup appearance is specifically abridged under Illinois Supreme Court Rules 411 and 413, and limits the power of a judicial officer "to require an accused to appear at a lineup only after indictment or information."

Rule 411 provides:

"These rules shall be applied in all criminal cases wherein the accused is charged with an offense for which, upon conviction, he might be imprisoned in the penitentiary. They shall become applicable following indictment or information and shall not be operative prior to or in the course of any preliminary hearing." 134 Ill. 2d R. 411.

Rule 413 provides in pertinent part:

"(a) The Person of the Accused. Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, a judicial officer may require the accused, among other things, to:

(i) appear in a lineup;

(ii) speak for identification by witnesses to an offense;

(iii) be fingerprinted;

(iv) pose for photographs not involving reenactment of a scene;

(v) try on articles of clothing;

(vi) permit the taking of specimens of material under his fingernails;

(vii) permit the taking of samples of his blood, hair and other materials of his body which involve no unreasonable intrusion thereof;

472

(viii) provide a sample of his handwriting; and

(ix) submit to a reasonable physical or medical inspection of his body." 134 Ill. 2d R. 413.

It is clear from the face of these provisions that these rules are intended to be additive rather than proscriptive. They are designed to provide the State with a right to obtain discovery even after initiation of judicial proceedings but in no way diminish the scope of grand jury investigation prior to indictment. Given defendant's interpretation, the grand jury's power to obtain any real or physical evidence would be effectively eliminated, since a strong argument can be made to vitiate the use of a grand jury subpoena altogether after indictment. See *People v. DeLaire* (1993), 240 Ill. App. 3d 1012, 1029, where it considers the contention:

"Where the investigation focuses on the facts already covered by the indictment, the subpoena must be quashed because the inquiry of the grand jury has ended. Without the extraordinary purpose of the grand jury, the State lacks the reason behind the relaxation of the fourth amendment protections overridden by a subpoena. After the indictment, the State must comply with ordinary discovery means."

Moreover, defendant's contention is inconsistent with and would render moot the decision of our supreme court in *In re May*, which analyzes the powers of the grand jury to obtain the types of physical evidence, prior to indictment, for which Rule 413 provides discovery after indictment.

We note, however, in the event enforcement is again sought with respect to this grand jury subpoena, the trial court should bear in mind that a grand jury subpoena cannot be deployed merely to assist a police investigation. Its power cannot be used as a means simply to further an independent police investigation. See *People v. DeLaire*, 240 Ill. App. 3d at 1022-23:

"The prosecutor or police may not usurp the powers of the grand jury.

'The subpoena power of the grand jury is designed for its own use, not to further independent investigations of the prosecutor or police. In most jurisdictions, the prosecutor may have subpoenas issued without advance authorization of the grand jury but the purpose of the subpoena must be to produce evidence for use of the grand jury.' [Citation.]

The prosecutor may screen the materials prior to the presentation to the jurors, but he may not use the subpoena as a ruse to obtain information."

Thus while we do not believe that the lineup must necessarily be conducted in the presence of the grand jury, if it does take place on

the outside, it must still be conducted on behalf of the grand jury to assist its investigative function.

Therefore, in enforcing a subpoena which seeks to compel a lineup appearance outside of the grand jury's presence, as was the case here, the trial court should obtain the assurance of the State's Attorney that the lineup be conducted on behalf of the grand jury and that the results will be reported back to it.

For the forgoing reasons, the judgment of contempt from which this appeal is taken is reversed and vacated.

Judgment reversed and vacated.

MURRAY and McNULTY, JJ., concur.