NO. 4-96-0145

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

THE JANUARY 1996 TERM GRAND JURY,       )   Appeal from

SUBPOENA DUCES TECUM,                   )   Circuit Court of 

THE PEOPLE OF THE STATE OF ILLINOIS,    )   Sangamon County

          Plaintiff-Appellee,           )   No. 96NC434

          v.                            )   

MAMIE G. WILLIAMS,                      )   Honorable

          Defendant-Appellant.          )   Leo J. Zappa, Jr.,

                                        )   Judge Presiding.

_________________________________________________________________

          JUSTICE STEIGMANN delivered the opinion of the court:

          This case arises from an effort to quash a grand jury

subpoena duces tecum requiring Mamie G. Williams (defendant) to

submit handwriting exemplars, fingerprints, and photographs of

herself.  The trial court denied defendant's motion to quash. 

Defendant appeals, and we affirm.

                               I. BACKGROUND

          On January 25, 1996, the Sangamon County grand jury

issued a subpoena duces tecum commanding defendant to appear

before the Sangamon County grand jury on February 29, 1996, at 9

a.m.  The subpoena also commanded her to "provide handwriting

exemplars, fingerprints and photographs of yourself in your

possession or control."  

          On January 31, 1996, defendant filed a motion to quash

the grand jury subpoena, in which she alleged that she had been

the subject of an investigation conducted primarily by special

agent Ned Bandy of the Illinois State Police.  Bandy had asked

defendant to provide him the same items that were the subject of

the grand jury subpoena duces tecum, and she had refused.  Defen-

dant further claimed that "it appears from the circumstances that

a Grand Jury subpoena has here been deployed merely to assist or

further an independent police investigation."  Last, defendant

complained that the grand jury subpoena improperly infringed upon

her constitutional right of privacy, in violation of article I,

section 6, of the 1970 Illinois Constitution, because it was

issued "without any apparent showing of relevance and individual-

ized suspicion."  

          On February 20, 1996, the trial court conducted a

hearing on defendant's motion at which a Sangamon County assis-

tant State's Attorney told the court that investigators, includ-

ing Bandy, believed that the case they were pursuing was appro-

priate for the grand jury's investigation, and the grand jury

needed to obtain additional information to further that investi-

gation.  The assistant State's Attorney also represented that it

was only after evidence had been presented to the grand jury that

the grand jury issued the subpoena in question.   She further

represented that, to the best of her knowledge, the State's

Attorney's office had not yet received a transcript of the

testimony presented to the grand jury.  The assistant State's

Attorney claimed that a "particularized and individualized

showing *** was made at the time [the case] was presented *** to

the Grand Jury to satisfy them [sic] to issue the subpoena."  She

then invited the court to review the transcript of the grand jury

proceedings for itself.

          In response, defendant argued that the State had failed

to produce anything at the hearing, and in fact "[t]he State has

produced absolutely nothing to show there was even a [g]rand

[j]ury convened."  The following discussion then took place:

               "THE COURT:  I will find out who is

          preparing the transcript and review it to see

          if any of these issues regarding reasonable

          suspicion are allowed, so I'll take it under

          advisement and I'll let you know as quickly

          as possible.

               [Defense counsel]:  Judge, the deadline

          to comply with [the g]rand [j]ury['s subpoe-

          na] is coming up.  I take it that the --

               THE COURT:  You'll have a decision by

          the 29th [of February] unless the court re-

          porter tells me that the transcript can't be

          done by then, but if I find that out, I'll

          call your office and let you know.

               [Defense counsel]:  Or could, Judge, as

          an alternative could the Court rule that the

          [g]rand [j]ury subpoena is held in abeyance

          until the time -- until five days after the

          Court's ruling?

               THE COURT:  That's fine."

          Two days later, on February 22, 1996, the trial court

entered the following written order:  "Cause called for hearing

on Defendant's Motion to Quash Grand Jury Subpoena.  Arguments

made and considered.  Motion denied."  Defendant filed nothing

further in the trial court and sought no clarification of the

court's order.  

          On February 28, 1996, defendant filed a notice of

appeal.  The next day, she filed an emergency motion to stay the

effect of the grand jury subpoena.  This court subsequently

denied that motion. 

          On June 7, 1996, the State filed a motion with this

court seeking to supplement the record on appeal with Bandy's

January 25, 1996, grand jury testimony regarding defendant's

alleged criminal activities.  On June 11, 1996, defendant filed a

motion in opposition to that request, and on June 12, 1996, this

court denied the State's request.  

          On June 17, 1996, the State filed a motion to reconsid-

er this court's order denying its motion to supplement the

record, arguing in part that the transcript of the February 20,

1996, hearing indicated the trial court intended to review the

grand jury transcript at issue, and that the court did not enter

a written order denying defendant's motion to quash the grand

jury subpoena until two days later, February 22, 1996.  On June

19, 1996, defendant filed a motion in opposition to reconsidera-

tion, and this court ordered the State's motion taken with the

case.  

          In her motion in opposition, defendant contends that

allowing the State to amend the record would violate "a cardinal

rule of appellate practice"--that exhibits or evidence which were

not made part of the record below cannot be considered for the

first time on appeal.  Although we agree with that general

statement, we conclude, based upon our review of this record,

that the grand jury transcript in question is not in fact being

considered for the first time on appeal.  At the conclusion of

the February 20, 1996, hearing, the trial court made clear its

intention to obtain and consider the grand jury transcript

containing Bandy's testimony.  Two days later, the court entered

an order denying defendant's motion.  While it would have been

preferable for the trial court to explicitly state that it had in

fact considered Bandy's grand jury testimony during the interven-

ing two days, the record sufficiently supports the inference that

the court should be taken at its word:  it said it would rule

only after it reviewed the transcript, and its ruling two days

later strongly implies that is just what happened.    

          We note, however, that the trial court never formally

admitted into evidence the transcript of the grand jury testimo-

ny.  Thus, this case presents a difficult question:  Whether we

can allow amendment of the record to include the transcript of

the grand jury testimony when the court never formally received

it.  Supreme Court Rule 329, which governs amendments to the

record after a case is on appeal, states as follows:

               "The record on appeal shall be taken as

          true and correct unless shown to be otherwise

          and corrected in a manner permitted by this

          rule.  Material omissions or inaccuracies or

          improper authentication may be corrected by

          stipulation of the parties or by the trial

          court, either before or after the record is

          transmitted to the reviewing court, or by the

          reviewing court or a judge thereof.  Any

          controversy as to whether the record accu-

          rately discloses what occurred in the trial

          court shall be submitted to and settled by

          that court and the record made to conform to

          the truth.  If the record is insufficient to

          present fully and fairly the questions in-

          volved, the requisite portions may be sup-

          plied at the cost of the appellant.  If nec-

          essary, a supplemental record may be certi-

          fied and transmitted."  (Emphasis added.) 

          134 Ill. 2d R. 329.

Supreme Court Rule 612(g) provides that Supreme Court Rule 329

applies to criminal appeals.  134 Ill. 2d R. 612(g).

          The comments of the Committee drafting Rule 329, as

amended in 1982, state:

               "This rule is a comprehensive provision

          covering amendment of the record on appeal,

          correction of improper authentication, and

          the settling of any questions concerning

          whether the record conforms to the truth.  It

          contains portions of former Rule 36(3) and

          (4).  Under this sweeping provision, it will

          be possible to supply omissions, correct

          inaccuracies or improper authentication, or

          settle any controversy as to whether the

          record on appeal accurately discloses what

          occurred at the trial by the procedure that

          will most appropriately solve the particular

          problem.  In view of the liberal terms of

          this paragraph, the rather elaborate provi-

          sions of former Rule 36(4), requiring that a

          claim as to improper authentication be raised

          by motion before or at the time of the filing

          of the brief of the party making the claim,

          were eliminated as no longer necessary. 

          Unless there is some real prejudice involved,

          there will be no incentive for claiming im-

          proper authentication."  134 Ill. 2d R. 329,

          Committee Comments, at 289.

          In People v. Chitwood, 67 Ill. 2d 443, 367 N.E.2d 1331

(1977), the Supreme Court of Illinois held that the appellate

court should have permitted amendment of a trial court record to

include an affidavit filed in that court which showed that the

defendant had made a valid jury waiver and agreed to a bench

trial.  The trial court had apparently held a hearing in regard

to the affidavit and indicated it was true.  The supreme court

described Rule 329--which was in substantially the same form then

as now--as "a very broad provision whose object is to allow the

record on appeal to be amended to correct inaccuracies, supply

omissions, correct improper authentication and settle controver-

sies as to whether the record on appeal accurately discloses what

occurred at trial."  Chitwood, 67 Ill. 2d at 447, 367 N.E.2d at

1333.

          In People v. Miller, 190 Ill. App. 3d 981, 548 N.E.2d 1

(1989), defendant claimed that he had been deprived of an oppor-

tunity to prepare for trial when on the Friday before a Monday

trial, the State furnished voluminous discovery to the defense,

and the defense did not have enough time to study it.  The State

contended that all significant information had been furnished

earlier in police reports.  The appellate court permitted the

State to amend the record to include those police reports, noting

that the police reports were (1) referred to in answers to

discovery, (2) mentioned in the judge's notes, and (3) referred

to in trial testimony.  Miller, 190 Ill. App. 3d at 989, 548

N.E.2d at 6.

          Here, the grand jury transcripts were mentioned of

record and the parties agreed that they should be examined by the

trial court.  Defendant has not argued that the transcripts are

not authentic.  Amending the record to include the transcripts

provides a more accurate record of what happened in the trial

court.  The Miller opinion warned that new evidence cannot be

introduced by supplementing the record on appeal.  Miller, 190

Ill. App. 3d at 989, 548 N.E.2d at 6.  However, these transcripts

do not constitute new evidence; instead, as we noted earlier, the

record shows that the trial court previously considered this

evidence.  We hold that the "broad" coverage of Rule 329 requires

the court to allow the State to amend the record to include the

transcripts.  Accordingly, we grant the State's motion to recon-

sider and will permit the State to supplement the record on

appeal with the transcript of Bandy's testimony from the January

25, 1996, proceedings before the Sangamon County grand jury.  

          Before concluding our remarks on this point, we wish to

make the following observations.  First, if defendant seriously

doubted that the trial court had done what it stated it intended

to do, defendant could have sought a further hearing or clarifi-

cation by that court before she filed her notice of appeal. 

Second, defendant--as appellant--bears the burden of producing a

record sufficiently complete to permit a court of review to

resolve all issues presented on appeal.  In this case, the

prosecutor told defendant at the February 20, 1996, hearing, that

Bandy testified before the Sangamon County grand jury on January

25, 1996, and that the State relied upon that testimony as

justification for issuing the subpoena at issue here.  None-

theless, this record contains no indication that defendant tried

to obtain a transcript of that testimony to include as part of

this record, despite the testimony's obvious significance. 

Without the January 25, 1996, transcript, defendant's appeal

before this court is in a stronger posture; thus, to deny the

State's motion to reconsider its request to supplement the record

on appeal would be to reward defendant for not providing a

complete record, as required by Supreme Court Rule 323(a) (see

155 Ill. 2d R. 323(a)).  All of these circumstances strongly

counsel that this court should grant the State's motion to

reconsider, which we now do.  

          Bandy testified before the grand jury on January 25,

1996, essentially as follows:  A woman staying at a local women's

crisis center had a credit card stolen from her purse and $3,000

charged on it.  Through a "Caller ID" system, the credit card

company informed Bandy that unauthorized calls regarding that

credit card came from defendant's residence.  Defendant worked at

the crisis center during the time the credit card was stolen. 

Bandy asked the grand jury for a subpoena duces tecum to (1) put

defendant's photo in a photo lineup to be shown to clerks who

furnished property charged to the stolen card; (2) compare

defendant's handwriting from known exemplars to the handwriting

on some of the charge slips; and (3) obtain defendant's finger-

prints to compare them with fingerprints that the police may be

able to raise from the charge slips. 

                               II. ANALYSIS

          Defendant based her motion to quash the grand jury's

subpoena on two grounds:  (1) the State failed to meet its burden

of showing individualized suspicion and relevance in order to

justify the issuance of the subpoena; and (2) the circumstances

of this case indicate that special agent Bandy was using the

grand jury's subpoena "merely to further his own independent

investigation."  Regarding the first argument, we hold that

Bandy's sworn testimony before the Sangamon County grand jury on

January 25, 1996, more than sufficed to provide whatever "indi-

vidualized suspicion and relevance" is required to justify

issuing the grand jury subpoena.  See In re May 1991 Will County

Grand Jury, 152 Ill. 2d 381, 393-94, 604 N.E.2d 929, 935-36

(1992) (hereafter In re May).  

          The second ground for defendant's argument--that Bandy

used the grand jury's subpoena "merely to further his own inde-

pendent investigation"--apparently derives from In re Rende, 262

Ill. App. 3d 464, 472, 633 N.E.2d 746, 751 (1993), a case in

which the appellate court, following the supreme court's holding

in In re May, quashed a grand jury subpoena seeking to compel the

defendant's appearance in a lineup.  The appellate court in Rende

held that the remarks of the prosecutor before the grand jury

were both "unsworn and factually insufficient" to establish the

required individualized suspicion and relevance.  Rende, 262 Ill.

App. 3d at 470, 633 N.E.2d at 750.  The court in Rende also con-

cluded that the record failed to show that the prosecutor's

statement in question was brought to the trial court's attention

before it ruled upon the motion to quash the grand jury subpoena. 

As the Rende court explained, "[t]here is nothing in the record

to show that the trial judge examined or was guided by [the

prosecutor's] statement."  Rende, 262 Ill. App. 3d at 470, 633

N.E.2d at 750.

          After so holding, the Rende court added the following

dicta:  

               "We note however, in the event enforce-

          ment is again sought with respect to this

          grand jury subpoena, the trial court should

          bear in mind that a grand jury subpoena can-

          not be deployed merely to assist a police

          investigation.  Its power cannot be used as a

          means simply to further an independent police

          investigation.  See People v. DeLaire, 240

          Ill. App. 3d [1012], 1022-23[, 610 N.E.2d

          1277, 1284 (1993)]:

               `The prosecutor or police may not

               usurp the powers of the grand jury.

                         "The subpoena power

                    of the grand jury is

                    designed for its own use,

                    not to further indepen-

                    dent investigations of

                    the prosecutor or police. 

                    In most jurisdictions,

                    the prosecutor may have

                    subpoenas issued without

                    advance authorization of

                    the grand jury but the

                    purpose of the subpoena

                    must be to produce evi-

                    dence for use of the

                    grand jury."  [Citation.]

               The prosecutor may screen the mate-

               rials prior to the presentation to

               the jurors, but he may not use the

               subpoena as a ruse to obtain infor-

               mation.'

               Thus while we do not believe that the

          lineup must necessarily be conducted in the

          presence of the grand jury, if it does take

          place on the outside, it must still be con-

          ducted on behalf of the grand jury to assist

          its investigative function.

               Therefore, in enforcing a subpoena which

          seeks to compel a lineup appearance outside

          of the grand jury's presence, as was the case

          here, the trial court should obtain the as-

          surance of the State's Attorney that the

          lineup be conducted on behalf of the grand

          jury and that the results will be reported

          back to it."  (Emphasis added.)  Rende, 262

          Ill. App. 3d at 472-73, 633 N.E.2d at 751-52.

          We are not sure what the Rende and DeLaire courts meant

when they cautioned against a grand jury subpoena being "deployed

merely to assist a police investigation," or the grand jury's

powers being "used as a means simply to further an independent

police investigation."  Rende, 262 Ill. App. 3d at 472, 633

N.E.2d at 751.  Except when investigating possible criminal

conduct by the police themselves, the grand jury works in concert

with the police to investigate alleged criminal behavior and to

bring charges based thereon when probable cause exists to do so. 

Further, the State's Attorney, who is the county's chief law

enforcement officer, coordinates the work of the grand jury and

the police.

          Article 112 of the Code of Criminal Procedure of 1963

(725 ILCS 5/112-1 et seq. (West 1994)), which governs grand jury

proceedings, makes clear the close working relationship between

the State's Attorney, the grand jury, and the police.  The grand

jury shall convene as ordered by the circuit court "on its own

motion or that of the State's Attorney."  725 ILCS 5/112-3(b)

(West 1994).  The grand jury shall hear all evidence presented by

the State's Attorney (725 ILCS 5/112-4(a) (West 1994)), and has

the right "to obtain and examine any documents *** relevant to

the matter being prosecuted by the State's Attorney" (725 ILCS

5/112-4(b) (West 1994)).  Of course, experience shows that the

evidence presented by the State's Attorney to the grand jury

overwhelmingly consists of police testimony.  Last, disclosure of

matters occurring before the grand jury, which would otherwise be

prohibited, may be made to:

               "a.  a State's Attorney for use in the

          performance of such State's Attorney's duty;

          and 

               b.  such government personnel as are

          deemed necessary by the State's Attorney in

          the performance of such State's Attorney's

          duty to enforce State criminal law."  725

          ILCS 5/112-6(c)(1)(a), (c)(1)(b) (West 1994).

The only limitation--if it even can be called that--on the

State's Attorney's power to disclose grand jury proceedings to

"government personnel" (an intentionally broad term which, at a

minimum, includes the police) is that the State's Attorney must

promptly provide the court that impaneled the grand jury with the

names of the persons to whom such disclosure has been made.  725

ILCS 5/112-6(c)(2) (West 1994).  

          The DeLaire court correctly described the broad inves-

tigative powers of the grand jury, as follows:

          "The grand jury occupies a unique role in our

          criminal justice system.  It is an investiga-

          tory body charged with the responsibility of

          determining whether probable cause that a

          crime has occurred exists.  The grand jury

          can investigate merely on a suspicion that

          the law is being violated or even just be-

          cause it wants assurance that it is not.  *** 

          The State is not required to justify the

          issuance of a subpoena by establishing proba-

          ble cause because the very purpose of the

          request is to ascertain whether probable

          cause exists."  DeLaire, 240 Ill. App. 3d at

          1021, 610 N.E.2d at 1282-83.

See also People v. Fassler, 153 Ill. 2d 49, 59, 605 N.E.2d 576,

581 (1992) (grand jury's power to conduct criminal investigations

should be accorded broadest possible scope).

          Given the context of the relationship between the

State's Attorney, the grand jury, and the police, we have diffi-

culty imagining a scenario in which the concerns expressed by the

Rende court--namely, an abuse of the grand jury's power "to

further an independent police investigation," would apply. 

Rende, 262 Ill. App. 3d at 472, 633 N.E.2d at 751.  Although the

police have important powers to investigate and make arrests,

those powers are limited.  The police do not possess the authori-

ty to charge someone with a crime; only the State's Attorney (or

the grand jury, acting invariably at the State's Attorney's

behest) possesses that authority.  While the police may arrest

someone based upon an officer's reasonable belief that the person

committed some crime, the length of that person's custody (based

upon the officer's action) will typically last only a few hours,

until a prosecutor reviews the case, decides whether to initiate

formal criminal charges, and, if so, determines which ones.  The

State's Attorney is the county's chief law enforcement officer

precisely because the State's Attorney alone possesses these two

extraordinary powers.

          When the Rende court speaks of "independent police

investigations," it implies investigations independent of the

State's Attorney and the grand jury.  But if the police are

conducting such an independent investigation, to what end?  Given

the many demands high crime rates impose upon the police, and

given their severely limited resources, can they really be con-

ducting investigations independent of the State's Attorney and

grand jury with the sole purpose of satisfying their idle curios-

ity?  Surely police investigations are conducted in the ultimate

hope that the police will be able to ascertain the identity of

the person who committed the crime being investigated, and that

the police will then be able to persuade the State's Attorney or

grand jury to file formal charges.  If this assessment is cor-

rect, the concerns expressed in Rende and DeLaire are groundless.

          We conclude that Rende and DeLaire should be limited to

the factual contexts in which they arose:  post-indictment use of

a grand jury subpoena duces tecum to obtain material that the

State should obtain--if obtainable at all--through formal discov-

ery procedures provided by Supreme Court Rule 413 (134 Ill. 2d R.

413).  We agree with this holding because, when the grand jury

has returned an indictment, its work in that particular case has

ended, unless (1) the State wishes to seek additional charges

against the indicted defendant, or (2) the State wishes to charge

additional defendants.  Neither circumstance was present in Rende

or DeLaire.

          We have gone to some length to express our disagreement

with the dicta from Rende and DeLaire regarding concerns about

"independent police investigations" because of the problems that

dicta can cause.  This case is a prime example, given defendant's

claim that Bandy used the grand jury's subpoena "merely to

further his own independent investigation."  The record before us

makes clear that no "independent investigation" ever existed 

and--in the context of this case--that conducting an "independent

investigation" would make absolutely no sense.  After all, what

is Bandy supposed to do with the results of his completed inves-

tigation, if not call them to the attention of the State's

Attorney for use in bringing formal charges, either by informa-

tion or grand jury indictment?  Accordingly, we reject

defendant's argument that Bandy misused the grand jury's powers.

                              III. CONCLUSION

          For the reasons stated, we affirm the trial court's

judgment.

          Affirmed.          

          COOK, P.J. and GREEN, J., concur.