# Illinois Official Reports

## Supreme Court

---

*People v. Boston*, 2016 IL 118661

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JERRY BOSTON, Appellant. |
| Docket No. | 118661 |
| Filed | February 26, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County; the Hon. Arthur F. Hill, Jr., Judge, presiding. |
| Judgment | Appellate court judgment affirmed. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg and Patricia Mysza, Deputy Defenders, and Sarah J. Curry, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Jeffrey W. Allen, Assistant State's Attorneys, of counsel), for the People. |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. Chief Justice Garman and Justices Freeman, Thomas, Kilbride, and Karmeier concurred in the judgment and opinion. Justice Burke dissented, with opinion. |

¶ 1 This appeal arises from the first degree murder conviction of defendant, Jerry Boston, for the 1997 killing of his former girlfriend, Tonya Pipes. Defendant was charged in 2005 with the murder after a bloody palm print discovered at the crime scene was shown to match defendant's palm print which was obtained by the State through a grand jury subpoena. The circuit court of Cook County denied defendant's motion to quash the subpoena and suppress the palm print evidence, and the appellate court affirmed. 2014 IL App (1st) 111489-U, ¶ 66. For the reasons that follow, we also affirm.

¶ 2                                    BACKGROUND

¶ 3 On August 25, 1997, Pipes was found dead in her Chicago apartment with the upper portion of her body submerged in a bathtub which was dark with blood. A beer bottle and two knives were floating in the water. Pipes sustained multiple stab wounds to her neck and head, and semen was discovered on vaginal swabs taken during an autopsy. There was no evidence that she had been raped. Above the bathtub, there was a palm print left in Pipes's blood. The police cut out a piece of the wallboard with this print for analysis. The crime remained unsolved for years.

¶ 4 In April 2004, the State was investigating the cold case and appeared before a grand jury requesting the issuance of a subpoena. At the proceeding, Assistant State's Attorney LuAnn Snow (ASA Snow) informed the grand jury as follows:

"The Grand Jury has the right to subpoena and question any person against whom the State's Attorney is seeking a Bill of Indictment, or any other person, and to obtain and examine any documents or transcripts relevant to the matter being prosecuted by the State's Attorney.

I am asking for approval of a John Doe first degree murder subpoena under Grand Jury Number April 195. What we are asking for is the Illinois Department of Corrections, through one of the fingerprint technicians, [to] take palm prints and fingerprints of Jerry Boston, who is currently incarcerated at the Illinois Department of Corrections on a life sentence. He was the ex-boyfriend of a woman who was killed back in 1997, and the police have received information that he may be involved in her killing.

There is an unidentified palm print on the wall next to where the victim was found, so they want to get his palm prints. Palm prints are different from fingerprints. Everyone arrested gets fingerprinted, but not necessarily palm printed."

¶ 5 After deliberating, the grand jury granted the subpoena. The subpoena was directed to the Illinois Department of Corrections instructing that it take a complete set of palm prints and fingerprints from defendant. The subpoena stated that "[c]ompliance with this subpoena may be made by tendering such items to ASA SNOW, or the Cook County Investigator serving the subpoena as an agent of the Cook County Grand Jury."

¶ 6 On April 16, 2004, Chicago police sergeant William Whalen and Detective Luis Munoz served defendant with the subpoena at Menard Correctional Center. After a set of palm prints and fingerprints were taken from defendant by an employee of the prison, the police delivered the prints to the Illinois State Police crime lab.

¶ 7        On May 4, 2004, Munoz secured a search warrant from a judge for defendant's DNA. After the DNA sample was collected, police submitted a request to compare defendant's DNA with the semen discovered on the vaginal swab taken during Pipes's autopsy. The test showed that the male DNA profile extracted from the semen recovered from the vaginal swab was consistent with having originated from defendant.

¶ 8        On July 12, 2005, the State again appeared before the grand jury. The State introduced the testimony of Whalen who testified that defendant's palm print matched the one discovered at the apartment where Pipes was found dead. He further testified that defendant's DNA matched seminal fluid discovered in Pipes's vagina. The State sought a bill of indictment against defendant for Pipes's murder, which the grand jury granted.[1] At the time, defendant was serving a natural life sentence on an unrelated armed robbery conviction.

¶ 9        Prior to trial, defendant filed a motion to quash the subpoena and suppress the palm print evidence. He argued that the State improperly used the grand jury to obtain the subpoena and to supplement a police investigation. Defendant asserted that the State violated his fourth amendment rights, and his rights under the Illinois Constitution, by seeking a grand jury subpoena rather than a search warrant from a judge. Defendant further argued that the State violated grand jury procedures by failing to return the fingerprint card to the grand jury. Defendant argued that any evidence seized as a result of the subpoena must therefore be suppressed.

¶ 10        The trial court denied the motion. Concerning defendant's constitutional claims, the trial court found that the information given to the grand jury was sufficient and particularized enough to prevent the court from quashing the subpoena. The trial court held that the subpoena was "predicated on what [it] believe[d] to be a particularized request by [the State] *** that a hand print or palm print be taken from the ex-boyfriend of a murder victim from 1997." With respect to the grand jury process, the trial court recognized that there was nothing in the record to indicate that when the grand jury issued the subpoena that it was asked to grant agency powers, or that it had granted the assistant State's Attorney agency powers. The trial court noted that the procedures before the grand jury were "[e]xtremely sloppy" and did not "comport with all dictates of procedure that [it] would expect in terms of conduct in front of the grand jury." The trial court further held that when the State subsequently appeared before the grand jury seeking the indictment, its appearance did not amount to a return of the subpoena to the grand jury. The trial court concluded, however, that the issue of prejudice weighed heavily against defendant and emphasized that his liberty interest was greatly restricted due to his status as an incarcerated felon. Given the totality of the circumstances, the trial court held that it would be improper to suppress the palm print evidence.

¶ 11        At the jury trial in December 2009, among other evidence, the State presented the DNA and palm print evidence. Several witnesses testified, including Randy Cook, defendant's cellmate from June 25 to July 10, 2008. Cook testified that defendant confided in him about the murder. Defendant told him that Pipes went into the bathroom while he was in the tub and the two got into an argument about defendant's drugs. Defendant snapped and began hitting and stabbing her.

---

[1]A different grand jury indicted defendant than granted the subpoena.

¶ 12    The jury found defendant guilty of first degree murder. He was sentenced to natural life in prison.

¶ 13    The appellate court affirmed. 2014 IL App (1st) 111489-U, ¶ 66. The appellate court rejected defendant's claim that the State lacked individualized suspicion to support the subpoena issued by the grand jury. *Id.* ¶ 26. The appellate court held that in light of defendant's limited expectation of privacy as an incarcerated felon, together with the information presented by the State in support of the subpoena, defendant's rights under the fourth amendment were not violated. *Id.* The appellate court held that a grand jury's subpoena power may not be used to further independent investigations by the police or the prosecutor. *Id.* ¶ 29. The appellate court found, however, that the request for the subpoena in this case allowed the assistant State's Attorney, and the investigator serving the subpoena, to act as agents of the grand jury. *Id.* Additionally, the appellate court held that while the palm prints had not been returned to the grand jury before being submitted to the crime lab, the State and investigators assigned to this case could have still obtained that evidence from the grand jury. *Id.* ¶ 30. Consequently, the appellate court concluded that defendant was not prejudiced by any improper procedures. *Id.*

¶ 14    This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015).

¶ 15                                                ANALYSIS

¶ 16                                                    I

¶ 17    Before this court, defendant again challenges the propriety of the trial court's denial of his motion to suppress the palm print evidence.

¶ 18    When reviewing a trial court's ruling on a motion to suppress evidence, we apply the two-part test adopted by the Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *People v. Gaytan*, 2015 IL 116223, ¶ 18. First, we will uphold the trial court's factual findings unless they are against the manifest weight of the evidence. *Id.* Second, we review *de novo* the trial court's ultimate legal conclusion as to whether suppression is warranted. *Id.* The relevant facts in this case are not in dispute. Our analysis therefore focuses on the correctness of the trial court's legal conclusion that the palm print evidence obtained by the State via the grand jury subpoena should not be suppressed.

¶ 19    This court has long recognized that the grand jury is an integral part of the court, and the court has the inherent power to supervise and prevent perversion of the grand jury's process. *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 393 (1992) (citing *People v. Sears*, 49 Ill. 2d 14, 35-36 (1971)). "The purpose of a grand jury investigation is both to exonerate individuals under suspicion of having committed a crime (*People v. Rodgers* (1982), 92 Ill. 2d 283, 289) and to establish the probable cause necessary for the arrest of suspected felons (*Phillips v. Graham* (1981), 86 Ill. 2d 274, 284)." *Id.* at 392.

¶ 20    This court has also found that "the public also has an interest in maintaining the breadth of the grand jury's power to conduct investigations necessary to ferret out criminal activity." *People v. Florendo*, 95 Ill. 2d 155, 158 (1983). A specific charge need not be pending as a condition of the grand jury's right to issue a subpoena. *Will County*, 152 Ill. 2d at 392-93 (citing *People v. Allen*, 410 Ill. 508, 517 (1951)). "[S]uch a requirement would unduly trammel its investigation." *Id.* at 392.

- 4 -

¶ 21    Consistent with the purpose of maintaining the grand jury's power to conduct investigations, section 112-4(b) of the Code of Criminal Procedure of 1963 (Code) provides, in relevant part:

> "(b) The Grand Jury has the right to subpoena and question any person against whom the State's Attorney is seeking a Bill of Indictment, or any other person, and to obtain and examine any documents or transcripts relevant to the matter being prosecuted by the State's Attorney." 725 ILCS 5/112-4(b) (West 2012).

"[S]ection 112-4, in confirming the grand jury's power to subpoena any person, also gives the grand jury the right to demand that the person subpoenaed provide evidence within the limitations imposed by constitutional guarantees of individual rights." *Will County*, 152 Ill. 2d at 389. Section 112-6(c)(1) of the Code further provides that a disclosure of matters occurring before the grand jury, which would otherwise be prohibited by this section, may be disclosed to the State's Attorney for use in the performance of his duty and such government personnel as are deemed necessary by the State's Attorney in the performance of his duty to enforce state criminal law. 725 ILCS 5/112-6(c)(1) (West 2012).

¶ 22    Defendant relies upon *Will County* and *In re Rende*, 262 Ill. App. 3d 464 (1993), for the proposition that the requirements for the issuance of a grand jury subpoena were not met in this case.

¶ 23    In *Will County*, the grand jury issued subpoenas for two individuals who did not have any pending charges filed against them. *Will County*, 152 Ill. 2d at 385. One of the individuals was required by subpoena to provide palm prints and fingerprints. *Id.* For both individuals, the subpoenas required them to appear in a lineup and submit blood and hair samples. *Id.* This court considered whether there were any statutory or constitutional limitations on the grand jury's power to gather such physical evidence through the subpoenaing of witnesses. *Id.* at 388-89. We found no statutory bar that would prevent a grand jury from issuing such a subpoena. *Id.* at 388.

¶ 24    We then turned to whether a grand jury subpoena for noninvasive, as well as invasive, physical evidence was constitutionally permissible. *Id.* at 389. We recognized that both the United States Constitution (U.S. Const., amend. IV) and the Illinois Constitution (Ill. Const. 1970, art. I, § 6) prohibit searches and seizures which are unreasonable. *Will County*, 152 Ill. 2d at 389-90. We acknowledged that the Court, in *United States v. Dionisio*, 410 U.S. 1 (1973), held that an individual has no reasonable expectation of privacy in those physical characteristics which are commonly exposed to the public such as facial features and voice exemplars. *Will County*, 152 Ill. 2d at 389-90. Consequently, in the context of a grand jury subpoena for such evidence, the Court held that no preliminary showing of reasonableness is required to collect such evidence. *Id.* We therefore recognized in *Will County* that under the fourth amendment, no preliminary showing of reasonableness is required prior to the issuance of a grand jury subpoena for noninvasive physical evidence, which includes palm prints. *Id.* at 390.

¶ 25    This court further held that the Illinois Constitution goes beyond federal constitutional guarantees and expressly recognizes a zone of personal privacy. *Id.* at 391. We found that our state constitution provides broader protection from unreasonable intrusions than the fourth amendment. *Id.* We held that once a right to privacy is established, it is incumbent on us to balance the interest of the individual in maintaining his privacy against the interest of the

public in preserving the effectiveness of the grand jury. *Id.* at 392. This court instructed that where physical evidence of an invasive nature is sought, such as hair or blood samples, probable cause must be shown. *Id.* at 399-400. However, with regard to noninvasive physical evidence, such as palm prints or fingerprints, we held that under the Illinois Constitution, "some showing of individualized suspicion as well as relevance must be made" before a subpoena for such evidence may be issued. *Id.* at 393. We stated that this may be done through affidavit by the State's Attorney. *Id.*

¶ 26    Concerning the individualized suspicion requirement, we provided, as an example, an investigation where an Asian man was alleged to have committed a rape. *Id.* We stated that it would be improper to subpoena physical evidence from all 50 Asian men living in the community, none of whom was suspect for reasons other than his race. *Id.* In explaining the relevancy requirement, we held that "[a] brief statement of the nature of the investigation would satisfy that requirement." *Id.* Because the State had not provided *any* evidence of relevance or individualized suspicion in *Will County*, we concluded that the subpoenas must be quashed. *Id.* at 393-94.

¶ 27    In *Rende*, the only representations made by the assistant State's Attorney to the grand jury was an unsworn statement identifying the crimes being investigated and claiming that the State had " 'information that [the defendant] may be a subject of—target of the investigation.' " *Rende*, 262 Ill. App. 3d at 469. The assistant State's Attorney did not identify the source of this information and did not positively assert that defendant was a target. *Id.* The appellate court concluded that this did not provide sufficient assurances that the request was not part of a general dragnet, rather than a request based on some unique knowledge pertaining to the defendant's involvement in the crimes. *Id.* at 469-70. For these reasons, the appellate court, following our instruction in *Will County*, held that the grand jury did not possess sufficient individualized suspicion to issue a subpoena to compel the defendant to submit to a lineup for identification purposes. *Id.*

¶ 28    In this case, defendant does not dispute, nor could he, that the palm print evidence was relevant. Instead, relying upon *Will County* and *Rende*, he argues that the State lacked the requisite individualized suspicion to support the issuance of the subpoena because ASA Snow's statement to the grand jury was based merely on a "hunch" and provided no real evidence which implicated him in Pipes's murder.

¶ 29    In marked contrast to the instant case, the subpoena in *Will County* was quashed after the State failed to provide *any* evidence of relevance or individualized suspicion to support the subpoenas. Similarly, in *Rende*, the subpoena was simply supported by testimony from the assistant State's Attorney that the defendant "may be a subject" of the investigation. Here, ASA Snow informed the grand jury in 2004 as follows: the police were investigating a 1997 murder; defendant was the ex-boyfriend of the victim; police had received information that defendant may be involved in the killing; there was an unidentified palm print left on the wall next to where the victim was found; defendant was currently incarcerated on a life sentence; and police wished to compare defendant's print to the one left at the scene. We recognize that the assistant State's Attorney failed to provide an affidavit to the grand jury. There is no allegation, however, that a false statement was somehow made by the State to the grand jury.

¶ 30    There is no basis for us to conclude, as urged by defendant, that this was somehow a "rogue police investigation" based merely on a "hunch." The police were investigating a brutal crime

- 6 -

that occurred almost seven years prior and had received information that defendant may be involved in the killing. The victim was murdered in her apartment and the particular evidence at issue was sought by the State from defendant as her former boyfriend. The State's request did not entail the type of "dragnet" about which we expressed concern in *Will County*. For these reasons, we find the information provided by the State to the grand jury was sufficiently tied to defendant to hold that there was individualized suspicion to warrant the grand jury subpoena.[2]

¶ 31                                                            II

¶ 32     Defendant also argues that the trial court should have suppressed the palm print evidence because the State improperly used the grand jury's subpoena power and violated grand jury procedures.

¶ 33     Defendant initially claims that the State abused the grand jury's subpoena power because it only sought the subpoena after an assistant State's Attorney determined that there was lack of probable cause. However, as we have explained, probable cause for a grand jury subpoena need not be shown where physical evidence of a noninvasive nature is sought, and palm print evidence falls into that category. Moreover, this claim is mere speculation and cannot be established in the record. Defendant supports his claim by simply citing to the factual background of his own pretrial motion to suppress. See *People v. Barner*, 2015 IL 116949, ¶ 69 n.4 (holding that we cannot rely upon a factual representation made in the background section of a party's own motion which cannot be independently established in the record).

¶ 34     Additionally, defendant claims that grand jury procedures were violated because the grand jury was not investigating the victim's murder when it was asked to issue the subpoena, and its authority was misused to further an independent police investigation. Defendant also contends that the State misused the grand jury process to obtain his palm prints because the subpoena was not made returnable to the grand jury, and once acquired, the prints were taken to the crime lab and not returned to the grand jury.

¶ 35     The State claims that its procedures before the grand jury were proper and that ASA Snow and the detectives were working on behalf of the grand jury to assist in their investigative function when the prints were taken to the crime lab for comparison.

¶ 36     We find our decision in *People v. Wilson*, 164 Ill. 2d 436 (1994), a capital case relied upon by both parties, to be controlling of the issue before us. In *Wilson*, defense counsel filed a pretrial motion *in limine* seeking to preclude, in pertinent part, the use of statements that the defendant had made to Julie Rice of the McLean County Center for Human Services. *Id.* at 455. The trial court denied the motion *in limine*. *Id.*

¶ 37     Among other issues raised on appeal, the defendant claimed that the State's Attorney had abused the grand jury's subpoena power to obtain Rice's records. *Id.* at 457. The defendant relied upon the fact that the subpoena was not prepared at the direction of the grand jury, but at the direction of the State's Attorney; the records were made returnable to the State's

---

[2]Defendant's status as an incarcerated felon did not factor into our determination that there was sufficient individualized suspicion to warrant the grand jury subpoena. Consequently, there is no need for us to consider defendant's claim that his status did not diminish his right to privacy because the State was investigating an offense unrelated to that for which he was incarcerated.

Attorney's office rather than the grand jury; and the records were not shown to the grand jury. *Id.* The State's Attorney claimed that he acted " 'in anticipation of the grand jury's consideration of matters under investigation' " when issuing the subpoenas. *Id.*

¶ 38    This court instructed that grand jury subpoenas are returnable to the grand jury, similar to how a witness, who is subpoenaed by the grand jury, must report to the grand jury. *Id.* at 458. We further recognized that the grand jury has the power to disclose subpoenaed documents to the State's Attorney for the purpose of furthering his or her responsibility of enforcing the law. *Id.* Although the State's Attorney has the statutory power to subpoena documents, those documents should be made returnable to the court, so the court can determine relevance and materiality, privilege, and whether the subpoena is unreasonable or oppressive before the State's Attorney has access to the material. *Id.*

¶ 39    In *Wilson*, we found that the State's Attorney had misused the grand jury process in obtaining the subpoenas, by substituting his authority to obtain subpoenas for that of the grand jury and by not requiring that the documents be returnable to the grand jury. *Id.* We ultimately held, however, that if the proper procedures had been followed, the State's Attorney could still have received the documents from the grand jury. *Id.* Consequently, we found that the defendant was not prejudiced by the process used to obtain his mental health records and the documents were properly admitted at trial. *Id.*

¶ 40    Here, we agree with the trial court that the State was "sloppy" in certain procedures that it followed before the grand jury and it should not be repeated. Similar to *Wilson*, the subpoena in this case was not prepared at the direction of the grand jury but, rather, at the direction of the State's Attorney. Additionally, the prints were made returnable to ASA Snow, or the Cook County investigator serving the subpoena purportedly as an agent of the grand jury, rather than the grand jury itself. As the trial court correctly concluded, there is nothing in the record to indicate that when the grand jury issued the subpoena that it was asked to grant agency powers, or that it had granted ASA Snow or the police detectives agency powers.

¶ 41    None of the case law relied upon by defendant informs our decision because he fails to articulate how he was prejudiced. In this case, we recognize that the palm prints were never returned to the grand jury. Instead, the grand jury that indicted defendant heard evidence from police that the palm print discovered at the crime scene matched defendant's. Pursuant to section 112-6(c)(1) of the Code (725 ILCS 5/112-6(c)(1) (West 2012)), however, the grand jury could have disclosed the palm print evidence to the State for purposes of sending it to the crime lab for testing. Therefore, even if the palm prints had been returned to the grand jury before being submitted to the crime lab, the State could have still obtained that evidence under the Code from the grand jury for testing. Consistent with *Wilson*, there is no basis for us to disturb the trial court's holding because defendant has not shown that he was prejudiced in any way by the grand jury process employed by the State to obtain the palm prints.

¶ 42                                                    CONCLUSION

¶ 43    For these reasons, we affirm the judgment of the appellate court which affirmed the judgment of the circuit court denying defendant's motion to quash the subpoena and suppress the palm print evidence.

¶ 44        Appellate court judgment affirmed.

¶ 45        JUSTICE BURKE, dissenting:

¶ 46        I strongly disapprove of the State's Attorney's failure to follow the procedures that govern the grand jury subpoena process and must, for this reason, respectfully dissent.

¶ 47        "A grand jury is organized for the purpose of protecting citizens from unfounded accusation as well as investigating charges of crime and returning indictments thereon." *People v. Munson*, 319 Ill. 596, 604 (1925). See also *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972). A grand jury is an integral part of our court system and serves an important constitutional function as a check on prosecutorial power. *People v. Sears*, 49 Ill. 2d 14, 35-36 (1971). "The grand jury has always occupied a high place as an instrument of justice in our system of criminal law—so much so that it is enshrined in the Constitution." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 423 (1983). It is "a protector of citizens against arbitrary and oppressive governmental action." *United States v. Calandra*, 414 U.S. 338, 343 (1974).

¶ 48        Through the Code, our legislature has set forth the powers and duties of the grand jury and prosecutor. Section 112-4(a) of the Code provides that the grand jury "shall hear all evidence presented by the State's Attorney." 725 ILCS 5/112-4(a) (West 2012). On the basis of evidence heard, the grand jury is authorized to issue subpoenas (725 ILCS 5/112-4(b) (West 2012)), including a subpoena requiring an individual to provide physical evidence, as long as the taking of the evidence is within the limitations imposed by constitutional guarantees. *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 388-89 (1992).

¶ 49        Grand jury proceedings are secret (725 ILCS 5/122-6 (West 2012)), and this secrecy is " 'fundamental to our criminal procedure.' [Citation.]" *People v. Leavitt*, 2014 IL App (1st) 121323, ¶ 56. Because of the secrecy of grand jury proceedings, subpoenas issued by a grand jury are returnable to the grand jury only. *People v. Wilson*, 164 Ill. 2d 436, 458 (1994). In this way, the grand jury may prevent the disclosure of information or evidence that is irrelevant or immaterial, privileged, or the fruit of unreasonable or oppressive demands. *Id.*

¶ 50        Pursuant to section 112-6 of the Code, the grand jury, and the grand jury alone, has the power to disclose any evidence returned to it by means of a subpoena, to the State's Attorney, as well as such government personnel as the State's Attorney deems necessary to further performance of the State's Attorney's duty to enforce criminal laws. 725 ILCS 5/112-6(c)(1) (West 2012). If any information or evidence is disclosed to any government personnel, the State's Attorney is required by law to promptly provide the court that empanelled the grand jury with the names of such persons to whom disclosure is made. 725 ILCS 5/112-6(c)(2) (West 2012).

¶ 51        In this case, the procedures that govern grand jury proceedings were violated in numerous ways. ASA Snow did not offer "evidence" to the grand jury in support of issuing the subpoena but, rather, provided only her own unsworn statement. The subpoena that was issued states that ASA Snow had been designated "an agent of the Cook County Grand Jury." However, as the circuit court below pointed out, the transcript of proceedings before the grand jury shows that the subject of making ASA Snow an agent was never raised at any time. Furthermore, the subpoena was not made returnable to the grand jury but was, instead, made returnable to ASA Snow or the Cook County investigator serving the subpoena. Not only was this a violation of this court's decision in *Wilson*, it also thwarted any involvement of the grand jury. In addition,

even though the subpoena was made returnable to ASA Snow, it was not returned to her. Instead, the palm print was sent directly to the Illinois State Police crime lab. Finally, in violation of section 112-6(c)(2), ASA Snow did not promptly advise the court that the palm print had been sent to the crime lab.

¶ 52    Relying on *Wilson*, the majority holds that defendant has failed to show any prejudice resulting from the numerous violations that occurred here and, therefore, the errors were harmless. I cannot agree with this result. This was not simply a matter of " 'sloppy' " procedure (*supra* ¶ 40). Rather, what occurred in this case was a complete breakdown of the procedures governing the grand jury process.

¶ 53    State's Attorneys have a duty to comport themselves in a manner which "inspires respect for the administration of justice." *People v. Lyles*, 106 Ill. 2d 373, 412 (1985). As the United States Supreme Court has stated, prosecuting attorneys are:

> "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods *** as it is to use every legitimate means ***." *Berger v. United States*, 295 U.S. 78, 88 (1935).

¶ 54    The grand jury process is fundamental to our criminal procedure and our system of justice. The complete breakdown in the grand jury procedures that occurred in this case undermined the integrity of our judicial process. For this reason, I would hold that defendant's motion to suppress should have been granted. I would reverse defendant's conviction and remand for a new trial.