JANUARY 1996 TERM GRAND JURY, Subpoena *Duces Tecum* (The People of the State of Illinois, Plaintiff-Appellee, v. Mamie G. Williams, Defendant-Appellant).

Fourth District   No. 4—96—0145

Opinion filed September 25, 1996.—Rehearing denied November 4, 1996.

Bruce A. Beeman, of Beeman Law Offices, P.C., of Springfield, for appellant.

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

This case arises from an effort to quash a grand jury subpoena *duces tecum* requiring Mamie G. Williams (defendant) to submit handwriting exemplars, fingerprints, and photographs of herself. The trial court denied defendant's motion to quash. Defendant appeals, and we affirm.

## I. BACKGROUND

On January 25, 1996, the Sangamon County grand jury issued a subpoena *duces tecum* commanding defendant to appear before the Sangamon County grand jury on February 29, 1996, at 9 a.m. The subpoena also commanded her to "provide handwriting exemplars, fingerprints and photographs of yourself in your possession or control."

On January 31, 1996, defendant filed a motion to quash the grand jury subpoena, in which she alleged that she had been the subject of an investigation conducted primarily by special agent Ned Bandy of the Illinois State Police. Bandy had asked defendant to provide him the same items that were the subject of the grand jury subpoena *duces tecum*, and she had refused. Defendant further claimed that "it appears from the circumstances that a Grand Jury subpoena has here been deployed merely to assist or further an independent police investigation." Last, defendant complained that the grand jury subpoena improperly infringed upon her constitutional right of privacy, in violation of article I, section 6, of the 1970 Illinois Constitution, because it was issued "without any apparent showing of relevance and individualized suspicion."

On February 20, 1996, the trial court conducted a hearing on defendant's motion at which a Sangamon County assistant State's Attorney told the court that investigators, including Bandy, believed that the case they were pursuing was appropriate for the grand jury's investigation, and the grand jury needed to obtain additional information to further that investigation. The assistant State's Attorney also represented that it was only after evidence had been presented to the grand jury that the grand jury issued the subpoena in question. She further represented that, to the best of her knowledge, the State's Attorney's office had not yet received a transcript of the testimony presented to the grand jury. The assistant State's Attorney claimed that a "particularized and individualized showing *** was made at the time [the case] was presented *** to the Grand Jury to satisfy them [*sic*] to issue the subpoena." She then invited the court to review the transcript of the grand jury proceedings for itself.

In response, defendant argued that the State had failed to pro-

duce anything at the hearing, and in fact "[t]he State has produced absolutely nothing to show there was even a [g]rand [j]ury convened." The following discussion then took place:

> "THE COURT: I will find out who is preparing the transcript and review it to see if any of these issues regarding reasonable suspicion are allowed, so I'll take it under advisement and I'll let you know as quickly as possible.
>
> [Defense counsel]: Judge, the deadline to comply with [the g]rand [j]ury['s subpoena] is coming up. I take it that the—
>
> THE COURT: You'll have a decision by the 29th [of February] unless the court reporter tells me that the transcript can't be done by then, but if I find that out, I'll call your office and let you know.
>
> [Defense counsel]: Or could, Judge, as an alternative could the Court rule that the [g]rand [j]ury subpoena is held in abeyance until the time—until five days after the Court's ruling?
>
> THE COURT: That's fine."

Two days later, on February 22, 1996, the trial court entered the following written order: "Cause called for hearing on Defendant's Motion to Quash Grand Jury Subpoena. Arguments made and considered. Motion denied." Defendant filed nothing further in the trial court and sought no clarification of the court's order.

On February 28, 1996, defendant filed a notice of appeal. The next day, she filed an emergency motion to stay the effect of the grand jury subpoena. This court subsequently denied that motion.

On June 7, 1996, the State filed a motion with this court seeking to supplement the record on appeal with Bandy's January 25, 1996, grand jury testimony regarding defendant's alleged criminal activities. On June 11, 1996, defendant filed a motion in opposition to that request, and on June 12, 1996, this court denied the State's request.

On June 17, 1996, the State filed a motion to reconsider this court's order denying its motion to supplement the record, arguing in part that the transcript of the February 20, 1996, hearing indicated the trial court intended to review the grand jury transcript at issue, and that the court did not enter a written order denying defendant's motion to quash the grand jury subpoena until two days later, February 22, 1996. On June 19, 1996, defendant filed a motion in opposition to reconsideration, and this court ordered the State's motion taken with the case.

In her motion in opposition, defendant contends that allowing the State to amend the record would violate "a cardinal rule of appellate practice"—that exhibits or evidence which were not made part of the record below cannot be considered for the first time on appeal. Although we agree with that general statement, we conclude,

based upon our review of this record, that the grand jury transcript in question is *not* in fact being considered for the first time on appeal. At the conclusion of the February 20, 1996, hearing, the trial court made clear its intention to obtain and consider the grand jury transcript containing Bandy's testimony. Two days later, the court entered an order denying defendant's motion. While it would have been preferable for the trial court to explicitly state that it had in fact considered Bandy's grand jury testimony during the intervening two days, the record sufficiently supports the inference that the court should be taken at its word: it said it would rule only after it reviewed the transcript, and its ruling two days later strongly implies that is just what happened.

■ We note, however, that the trial court never *formally* admitted into evidence the transcript of the grand jury testimony. Thus, this case presents a difficult question: Whether we can allow amendment of the record to include the transcript of the grand jury testimony when the court never formally received it. Supreme Court Rule 329, which governs amendments to the record after a case is on appeal, states as follows:

"The record on appeal shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by this rule. Material omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court, *or by the reviewing court or a judge thereof.* Any controversy as to whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by that court and the record made to conform to the truth. If the record is insufficient to present fully and fairly the questions involved, the requisite portions may be supplied at the cost of the appellant. If necessary, a supplemental record may be certified and transmitted." (Emphasis added.) 134 Ill. 2d R. 329.

Supreme Court Rule 612(g) provides that Supreme Court Rule 329 applies to criminal appeals. 134 Ill. 2d R. 612(g).

The comments of the Committee drafting Rule 329, as amended in 1982, state:

"This rule is a comprehensive provision covering amendment of the record on appeal, correction of improper authentication, and the settling of any questions concerning whether the record conforms to the truth. It contains portions of former Rule 36(3) and (4). Under this sweeping provision, it will be possible to supply omissions, correct inaccuracies or improper authentication, or settle any controversy as to whether the record on appeal accurately discloses what occurred at the trial by the procedure that

will most appropriately solve the particular problem. In view of the liberal terms of this paragraph, the rather elaborate provisions of former Rule 36(4), requiring that a claim as to improper authentication be raised by motion before or at the time of the filing of the brief of the party making the claim, were eliminated as no longer necessary. Unless there is some real prejudice involved, there will be no incentive for claiming improper authentication." 134 Ill. 2d R. 329, Committee Comments, at 289.

In *People v. Chitwood*, 67 Ill. 2d 443, 367 N.E.2d 1331 (1977), the Supreme Court of Illinois held that the appellate court should have permitted amendment of a trial court record to include an affidavit filed in that court which showed that the defendant had made a valid jury waiver and agreed to a bench trial. The trial court had apparently held a hearing in regard to the affidavit and indicated it was true. The supreme court described Rule 329—which was in substantially the same form then as now—as "a very broad provision whose object is to allow the record on appeal to be amended to correct inaccuracies, supply omissions, correct improper authentication, and settle controversies as to whether the record on appeal accurately discloses what occurred at trial." *Chitwood*, 67 Ill. 2d at 447, 367 N.E.2d at 1333.

In *People v. Miller*, 190 Ill. App. 3d 981, 548 N.E.2d 1 (1989), defendant claimed that he had been deprived of an opportunity to prepare for trial when on the Friday before a Monday trial, the State furnished voluminous discovery to the defense, and the defense did not have enough time to study it. The State contended that all significant information had been furnished earlier in police reports. The appellate court permitted the State to amend the record to include those police reports, noting that the police reports were (1) referred to in answers to discovery, (2) mentioned in the judge's notes, and (3) referred to in trial testimony. *Miller*, 190 Ill. App. 3d at 989, 548 N.E.2d at 6.

■ Here, the grand jury transcripts were mentioned of record and the parties agreed that they should be examined by the trial court. Defendant has not argued that the transcripts are not authentic. Amending the record to include the transcripts provides a more accurate record of what happened in the trial court. The *Miller* opinion warned that new evidence cannot be introduced by supplementing the record on appeal. *Miller*, 190 Ill. App. 3d at 989, 548 N.E.2d at 6. However, these transcripts do not constitute new evidence; instead, as we noted earlier, the record shows that the trial court previously considered this evidence. We hold that the "broad" coverage of Rule 329 requires the court to allow the State to amend the record to

include the transcripts. Accordingly, we grant the State's motion to reconsider and will permit the State to supplement the record on appeal with the transcript of Bandy's testimony from the January 25, 1996, proceedings before the Sangamon County grand jury.

Before concluding our remarks on this point, we wish to make the following observations. First, if defendant seriously doubted that the trial court had done what it stated it intended to do, defendant could have sought a further hearing or clarification by that court before she filed her notice of appeal. Second, defendant—as appellant—bears the burden of producing a record sufficiently complete to permit a court of review to resolve all issues presented on appeal. In this case, the prosecutor told defendant at the February 20, 1996, hearing, that Bandy testified before the Sangamon County grand jury on January 25, 1996, and that the State relied upon that testimony as justification for issuing the subpoena at issue here. Nonetheless, this record contains no indication that defendant tried to obtain a transcript of that testimony to include as part of this record, despite the testimony's obvious significance. Without the January 25, 1996, transcript, defendant's appeal before this court is in a stronger posture; thus, to deny the State's motion to reconsider its request to supplement the record on appeal would be to reward defendant for not providing a complete record, as required by Supreme Court Rule 323(a) (see 155 Ill. 2d R. 323(a)). All of these circumstances strongly counsel that this court should grant the State's motion to reconsider, which we now do.

Bandy testified before the grand jury on January 25, 1996, essentially as follows: A woman staying at a local women's crisis center had a credit card stolen from her purse and $3,000 charged on it. Through a "Caller ID" system, the credit card company informed Bandy that unauthorized calls regarding that credit card came from defendant's residence. Defendant worked at the crisis center during the time the credit card was stolen. Bandy asked the grand jury for a subpoena *duces tecum* to (1) put defendant's photo in a photo lineup to be shown to clerks who furnished property charged to the stolen card; (2) compare defendant's handwriting from known exemplars to the handwriting on some of the charge slips; and (3) obtain defendant's fingerprints to compare them with fingerprints that the police may be able to raise from the charge slips.

## II. ANALYSIS

■ Defendant based her motion to quash the grand jury's subpoena on two grounds: (1) the State failed to meet its burden of showing individualized suspicion and relevance in order to justify the

issuance of the subpoena; and (2) the circumstances of this case indicate that special agent Bandy was using the grand jury's subpoena "merely to further his own independent investigation." Regarding the first argument, we hold that Bandy's sworn testimony before the Sangamon County grand jury on January 25, 1996, more than sufficed to provide whatever "individualized suspicion and relevance" is required to justify issuing the grand jury subpoena. See *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 393-94, 604 N.E.2d 929, 935-36 (1992) (hereafter *In re May*).

■ The second ground for defendant's argument—that Bandy used the grand jury's subpoena "merely to further his own independent investigation"—apparently derives from *In re Rende*, 262 Ill. App. 3d 464, 472, 633 N.E.2d 746, 751 (1993), a case in which the appellate court, following the supreme court's holding in *In re May*, quashed a grand jury subpoena seeking to compel the defendant's appearance in a lineup. The appellate court in *Rende* held that the remarks of the prosecutor before the grand jury were both "unsworn and factually insufficient" to establish the required individualized suspicion and relevance. *Rende*, 262 Ill. App. 3d at 470, 633 N.E.2d at 750. The court in *Rende* also concluded that the record failed to show that the prosecutor's statement in question was brought to the trial court's attention before it ruled upon the motion to quash the grand jury subpoena. As the *Rende* court explained, "[t]here is nothing in the record to show that the trial judge examined or was guided by [the prosecutor's] statement." *Rende*, 262 Ill. App. 3d at 470, 633 N.E.2d at 750.

After so holding, the *Rende* court added the following *dicta*:

"We note, however, in the event enforcement is again sought with respect to this grand jury subpoena, *the trial court should bear in mind that a grand jury subpoena cannot be deployed merely to assist a police investigation*. Its power cannot be used as a means simply to further an independent police investigation. See *People v. DeLaire*, 240 Ill. App. 3d [1012], 1022-23[, 610 N.E.2d 1277, 1284 (1993)]:

'The prosecutor or police may not usurp the powers of the grand jury.

"The subpoena power of the grand jury is designed for its own use, not to further independent investigations of the prosecutor or police. In most jurisdictions, the prosecutor may have subpoenas issued without advance authorization of the grand jury but the purpose of the subpoena must be to produce evidence for use of the grand jury." [Citation.]

The prosecutor may screen the materials prior to the presen-

tation to the jurors, but he may not use the subpoena as a ruse to obtain information.'

Thus while we do not believe that the lineup must necessarily be conducted in the presence of the grand jury, if it does take place on the outside, it must still be conducted on behalf of the grand jury to assist its investigative function.

Therefore, in enforcing a subpoena which seeks to compel a lineup appearance outside of the grand jury's presence, as was the case here, the trial court should obtain the assurance of the State's Attorney that the lineup be conducted on behalf of the grand jury and that the results will be reported back to it." (Emphasis added.) *Rende*, 262 Ill. App. 3d at 472-73, 633 N.E.2d at 751-52.

We are not sure what the *Rende* and *DeLaire* courts meant when they cautioned against a grand jury subpoena being "deployed merely to assist a police investigation," or the grand jury's powers being "used as a means simply to further an independent police investigation." *Rende*, 262 Ill. App. 3d at 472, 633 N.E.2d at 751. Except when investigating possible criminal conduct by the police themselves, the grand jury works in concert with the police to investigate alleged criminal behavior and to bring charges based thereon when probable cause exists to do so. Further, the State's Attorney, who is the county's chief law enforcement officer, coordinates the work of the grand jury and the police.

Article 112 of the Code of Criminal Procedure of 1963 (725 ILCS 5/112—1 *et seq.* (West 1994)), which governs grand jury proceedings, makes clear the close working relationship between the State's Attorney, the grand jury, and the police. The grand jury shall convene as ordered by the circuit court "on its own motion or that of the State's Attorney." 725 ILCS 5/112—3(b) (West 1994). The grand jury shall hear all evidence presented by the State's Attorney (725 ILCS 5/112—4(a) (West 1994)) and has the right "to obtain and examine any documents *** relevant to the matter being prosecuted by the State's Attorney" (725 ILCS 5/112—4(b) (West 1994)). Of course, experience shows that the evidence presented by the State's Attorney to the grand jury overwhelmingly consists of police testimony. Last, disclosure of matters occurring before the grand jury, which would otherwise be prohibited, may be made to:

"a. a State's Attorney for use in the performance of such State's Attorney's duty; and

b. such government personnel as are deemed necessary by the State's Attorney in the performance of such State's Attorney's duty to enforce State criminal law." 725 ILCS 5/112—6(c)(1)(a), (c)(1)(b) (West 1994).

The only limitation—if it even can be called that—on the State's At-

torney's power to disclose grand jury proceedings to "government personnel" (an intentionally broad term which, at a minimum, includes the police) is that the State's Attorney must promptly provide the court that impaneled the grand jury with the names of the persons to whom such disclosure has been made. 725 ILCS 5/112—6(c)(2) (West 1994).

The *DeLaire* court correctly described the broad investigative powers of the grand jury, as follows:

> "The grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether probable cause that a crime has occurred exists. The grand jury can investigate merely on a suspicion that the law is being violated or even just because it wants assurance that it is not. *** The State is not required to justify the issuance of a subpoena by establishing probable cause because the very purpose of the request is to ascertain whether probable cause exists." *DeLaire*, 240 Ill. App. 3d at 1021, 610 N.E.2d at 1282-83.

See also *People v. Fassler*, 153 Ill. 2d 49, 59, 605 N.E.2d 576, 581 (1992) (grand jury's power to conduct criminal investigations should be accorded broadest possible scope).

Given the context of the relationship between the State's Attorney, the grand jury, and the police, we have difficulty imagining a scenario in which the concerns expressed by the *Rende* court—namely, an abuse of the grand jury's power "to further an independent police investigation"—would apply. *Rende*, 262 Ill. App. 3d at 472, 633 N.E.2d at 751. Although the police have important powers to investigate and make arrests, those powers are limited. The police do not possess the authority to charge someone with a crime; only the State's Attorney (or the grand jury, acting invariably at the State's Attorney's behest) possesses that authority. While the police may arrest someone based upon an officer's reasonable belief that the person committed some crime, the length of that person's custody (based upon the officer's action) will typically last only a few hours, until a prosecutor reviews the case, decides whether to initiate formal criminal charges, and, if so, determines which ones. The State's Attorney is the county's chief law enforcement officer precisely because the State's Attorney *alone* possesses these two extraordinary powers.

When the *Rende* court speaks of "independent police investigations," it implies investigations independent of the State's Attorney and the grand jury. But if the police are conducting such an independent investigation, to what end? Given the many demands high crime rates impose upon the police, and given their severely limited resources, can they really be conducting investigations independent of

the State's Attorney and grand jury with the sole purpose of satisfying their idle curiosity? Surely police investigations are conducted in the ultimate hope that the police will be able to ascertain the identity of the person who committed the crime being investigated, and that the police will then be able to persuade the State's Attorney or grand jury to file formal charges. If this assessment is correct, the concerns expressed in *Rende* and *DeLaire* are groundless.

We conclude that *Rende* and *DeLaire* should be limited to the factual contexts in which they arose: *post-indictment* use of a grand jury subpoena *duces tecum* to obtain material that the State should obtain—if obtainable at all—through formal discovery procedures provided by Supreme Court Rule 413 (134 Ill. 2d R. 413). We agree with this holding because, when the grand jury has returned an indictment, its work in that particular case has ended, unless (1) the State wishes to seek additional charges against the indicted defendant, or (2) the State wishes to charge additional defendants. Neither circumstance was present in *Rende* or *DeLaire*.

We have gone to some length to express our disagreement with the *dicta* from *Rende* and *DeLaire* regarding concerns about "independent police investigations" because of the problems that *dicta* can cause. This case is a prime example, given defendant's claim that Bandy used the grand jury's subpoena "merely to further his own independent investigation." The record before us makes clear that no "independent investigation" ever existed and—in the context of this case—that conducting an "independent investigation" would make absolutely no sense. After all, what is Bandy supposed to do with the results of his completed investigation, if not call them to the attention of the State's Attorney for use in bringing formal charges, either by information or grand jury indictment? Accordingly, we reject defendant's argument that Bandy misused the grand jury's powers.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

COOK, P.J., and GREEN, J., concur.