# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *People v. O'Dette*, 2017 IL App (2d) 150884

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN A. O'DETTE, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0884 |
| Filed | March 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 14-CF-581; the Hon. Daniel B. Shanes, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Eric F. Rinehart, of Malia & Rinehart, of Waukegan, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Lawrence M. Bauer, and Mary Beth Burns, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1        After a stipulated bench trial, defendant, Stephen A. O'Dette,[1] was convicted of possessing child pornography (720 ILCS 5/11-20.1(a)(6) (West 2014)) and sentenced to three years' probation. On appeal, he contends that the trial court erred in denying his motion to suppress evidence that he alleged was obtained by the abuse of the grand jury's subpoena power. We affirm.

¶ 2        On April 2, 2014, defendant was indicted on seven counts of child pornography, each alleging that, on or about March 6, 2014, he had knowingly possessed a pornographic image of a child on his home computer. On April 1, 2015, he moved to suppress evidence that the police obtained by searching his home on March 6, 2014.

¶ 3        The motion alleged as follows. On January 8, 2014, Christopher Covelli of the Lake County sheriff's department issued a "grand jury subpoena" to AT&T Internet Services (AT&T). It stated in part, "You must comply with this request by sending legible copies to ATTN: Detective Covelli, Lake County Sheriff's Office, 25 S. Martin Luther King Jr. Ave., Waukegan, IL." It warned that the failure to comply might result in punishment for contempt of court. Covelli also gave AT&T his e-mail address. On January 20, 2014, AT&T returned the requested documents directly to Covelli. Covelli was not an attorney and had not been working at the direction of the grand jury. When the subpoena was issued, there was no grand jury convened to investigate defendant. The grand jury never reviewed the documents.

¶ 4        The motion alleged further as follows. On March 5, 2014, Covelli used the documents to obtain a warrant to search defendant's home. The warrant was executed the next day. Covelli had used the improper subpoena to conduct an investigation of his own outside the control or consultation of the grand jury. His methods were improper under this court's decision in *People v. DeLaire*, 240 Ill. App. 3d 1012 (1993), in which we held that a police detective had improperly received and exploited private information that the grand jury had subpoenaed.

¶ 5        Further, the motion contended, the State's Attorney's office had failed to follow the procedure outlined in section 115-7(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7(b) (West 2014)) for investigations of the possible sexual exploitation of children: instead of directing a subpoena to AT&T, returnable to the chief judge of the circuit court, the State's Attorney's office had "stamp[ed] 'Grand Jury Subpoena' on a document and then NEVER return[ed] the documents to the Grand Jury (or a magistrate)." The motion alleged that State's use of the subpoena to obtain a search warrant violated the fourth amendment and the Illinois Constitution. Finally, the defendant asserted that, because two months elapsed between Covelli's issuance of the subpoena and the search, the information that was provided for the warrant had become stale, requiring suppression on that ground as well.

¶ 6        The motion attached a copy of the subpoena. It was headed "Grand Jury" and directed to AT&T's office in San Antonio, Texas. It commanded AT&T to give evidence "concerning a certain complaint made before said Grand Jury, against "AN INVESTIGATION BY DETECTIVE CHRIS COVELLI OF THE LAKE COUNTY SHERIFF'S OFFICE." The evidence was "Any/All subscriber information including terminated information for the

---

[1]The indictment incorrectly gives defendant's name as "Odette."

AT&T IP [(Internet protocol)] Address of: 99.35.161.179. Including but not limited to names, including names of account holders, physical address of where account was established, physical address of service location, usernames [*sic*], associated email addresses, phone numbers, linked accounts, account creation/deactivation dates and I.P. Logs for 1/6/14-1/8/14."

¶ 7        On April 22, 2015, the trial court held a hearing on defendant's motion. Defendant called Covelli, who testified on direct examination as follows. In January 2014, he was a detective in the sheriff's department, working in the cyber crime section. On the evening of January 7, while he was working undercover on a computer used for investigations, "a specific [IP] address *** shar[ed] child pornography with [Covelli]." The computer that the IP address represented connected directly to Covelli's and provided pornographic images at his request. As soon as it did so, Covelli could see its IP address. An IP address does not identify a computer's physical location. Covelli next consulted the American Registry of Internet Numbers (ARIN), which lists Internet Service Providers (ISPs) for IP addresses. The list does not have subscriber information, which is held by the ISPs. The sending computer's ISP was AT&T.

¶ 8        Covelli testified that, later in January, he went to the State's Attorney's office "regarding a Grand Jury subpoena to be issued." He and Carol Gulbrandson, a paralegal in the State's Attorney's office, discussed drafting the subpoena. He did not know whether Gulbrandson had anyone else in the State's Attorney's office review the draft subpoena or whether she had been in contact with the grand jury.

¶ 9        Covelli testified that, before sending out the subpoena, he did not speak to anyone on the grand jury or, indeed, to anyone other than Gulbrandson. He did not seek a court order. Covelli faxed the subpoena to AT&T. AT&T responded by e-mail in approximately 12 days. When Covelli received the documents, he printed them out and placed them into the case file.

¶ 10       Covelli further testified that the subpoenaed documents gave him the physical address of the computer that had sent him the suspected child pornography. He spoke to the State's Attorney's office about the investigation, disclosing the address. Covelli did not do this at the request of the grand jury. Before seeking a search warrant, he did not disclose any of the subpoenaed documents to the State's Attorney's office or to the grand jury.

¶ 11       Covelli testified that, on March 5, 2014, he filled out a complaint for a search warrant. Before presenting it to a judge, he reviewed the complaint with Assistant State's Attorney Mary Stanton but not with anyone from the grand jury. A judge issued a warrant on March 5, 2014. Eventually, defendant's residence was searched; based on what was found, and his statement, he was arrested. Before testifying to the April 2014 grand jury, Covelli had never consulted with any member of the grand jury or taken any direction from it.

¶ 12       Covelli testified on cross-examination as follows. He was familiar with grand jury procedures in Lake County and knew that, in a given term, there is a list of appointed investigators for the grand jury. Covelli was on the list for the December 2013 and April 2014 terms. The trial court admitted the lists for these terms, as well as the orders appointing Covelli and others. The orders stated that the grand jury had petitioned to make 488 Lake County law-enforcement officers investigators and that they all "ha[d] been authorized by the Grand Jury and [were] authorized by the court to issue subpoenas for investigative matters to be heard by the Lake County Grand Jury, to receive materials and documents pursuant to those

subpoenas, and to provide those documents to the State's Attorney or his Assistants for enforcement of the laws of the State of Illinois."

¶ 13    Covelli testified that, when he consulted with the State's Attorney's office in preparation for obtaining the search warrant, he discussed whether the images were child pornography under Illinois law, how he had traced them to defendant, and the return from AT&T on the subpoena. On March 5, 2014, he presented the information about the IP address to the judge. Covelli identified a transcript of the grand jury proceedings of April 2, 2014, and testified that, on that date, he told the grand jury about the return on the subpoena. The court admitted the transcript. After defendant was indicted, Covelli sought no more grand jury subpoenas in this case.

¶ 14    Covelli testified on redirect examination that, between January 7 and April 2014, he did not tell anyone in the sheriff's department the details of his investigation, but "[i]t was known [that he] was investigating." He had not asked to be appointed a grand jury investigator for the December 2013 term. Asked how he had learned of his appointment, he testified, "Stanton said there is a list compiled quarterly of Grand Jury investigators. Our agency is investigators. That is one of the responsibilities of being a detective with the Sheriff." Covelli had never seen the list. On January 7, 2014, however, he was aware that he was a grand jury investigator.

¶ 15    In closing argument, defendant contended that Covelli had tried to circumvent the fourth amendment in that "[h]e sent a warrant to AT&T without running it by a judge, without running it by a Grand Jury." Unlike a subpoena *duces tecum*, the one that Covelli sent was not returnable to a court and did not provide notice to defendant. An administrative subpoena, which Covelli could have sought through the State's Attorney's office, would have been returnable to a court, which could have given notice to other parties. These two types of subpoena, as well as one authorized by a grand jury, would have imposed a "neutral authority" to "check the police." This protection was absent here, although defendant had a strong fourth amendment interest at stake.

¶ 16    Defendant contended that this court's opinion in *DeLaire* prohibited this circumvention of the fourth amendment and the Illinois Constitution's right of privacy. Covelli had not been "an actual investigator appointed by the Grand Jury," had not acted under its direction, and had not been subject to the independent review that *DeLaire* required. He had been named an investigator in response to a petition to appoint 488 law-enforcement officers in Lake County to that post. "[E]very possible investigator [was] appointed as a Grand Jury investigator," a *pro forma* act that negated the role of the grand jury as an independent check on the police. Covelli did not once talk to a grand juror. No judge had approved the subpoena. Yet AT&T had been told that it must comply, under the threat of contempt. The documents were sent directly to Covelli, because the subpoena had not been made returnable to the grand jury or the court. Also, the subpoena was invalid because Covelli had failed to request or receive the grand jury's approval to issue it.

¶ 17    The State responded as follows. In *DeLaire*, one of the subpoenas was issued after the defendant had been indicted, a problem not present here. More important, however, in *DeLaire*, the police detective had not been appointed as a grand jury investigator; here, Covelli had been duly appointed to that post, with the subpoena power included. That numerous law-enforcement officers received similar appointments did not make the process a sham, as defendant contended.

- 4 -

¶ 18    Defendant replied as follows. He had a privacy interest in the physical address associated with his computer's IP address. When Covelli subpoenaed AT&T, the grand jury was not investigating defendant or anyone else at his physical address. Yet Covelli told AT&T that it was required to release defendant's subscriber information.

¶ 19    The trial court denied defendant's motion to suppress, reasoning as follows. The disclosure of defendant's subscriber information implicated his state constitutional right to privacy. Defendant had attacked the issuance of the subpoena and its return and use. The court held that the subpoena could be issued even without any specific prior authorization by the grand jury. The statutory and case law imposed no such requirement, and *DeLaire* had actually stated that a prosecutor may have subpoenas issued without the grand jury's advance authorization, although the purpose must be to produce evidence for the grand jury's use. See *DeLaire*, 240 Ill. App. 3d at 1023. The court also distinguished *DeLaire* in that there the police detective had never been appointed as a grand jury investigator, but here the State's Attorney had followed *DeLaire* by having the grand jury petition to appoint Covelli to that position, which the court then did. Thus, there was no crucial defect in the issuance of the subpoena.

¶ 20    Addressing the return and use of the subpoena, the court stated as follows. The subpoena was not self-enforcing: AT&T could have moved to quash it or refused to comply and thus forced the State's Attorney to seek enforcement via a court proceeding. The existence of an alternative route, an administrative subpoena, did not exclude using the grand jury subpoena.

¶ 21    A more difficult issue for the court was the return. The case law was clear: grand jury subpoenas must be returnable to the grand jury. See *People v. Wilson*, 164 Ill. 2d 436, 458 (1994). That had not been done here. However, defendant still needed to demonstrate prejudice. The court held that defendant had not done so, because the court had appointed Covelli as a grand jury investigator and specifically provided that he could receive returns on its subpoenas for it. Also, even assuming that the subpoena did not make clear to AT&T that it was returnable to Covelli as an agent of the grand jury, "[h]ad the language in the subpoena been perfect, AT&T would have been that much more likely to comply, and a Court would have been that much more likely to enforce the subpoena had AT&T not complied."

¶ 22    The court then considered the subsequent use of the subpoena. The court noted that, after receiving the documents from AT&T, Covelli testified before the grand jury, disclosing information that he had acquired via the subpoena. He had had no legal obligation to tell the grand jury all the information, or even some of it, at least without a request from the grand jury.

¶ 23    The court distinguished *DeLaire* in that, in that case, (1) the police detective had never been appointed as a grand jury investigator and thus had not been its agent and (2) the issue was the validity of postindictment subpoenas. Further, *DeLaire* had been limited to its facts by the Fourth District's opinion in *January 1996 Term Grand Jury*, 283 Ill. App. 3d 883, 893 (1996). Finally, the court rejected defendant's argument that the information that supported the search-warrant application was stale (defendant does not raise this issue on appeal).

¶ 24    The court concluded that, although the subpoena should have stated clearly that it was returnable to the grand jury, defendant had not shown sufficient prejudice to warrant suppressing the evidence. The court denied his motion. Later, the State dismissed all but one charge, the court held a trial on stipulated evidence and found defendant guilty, and the court sentenced defendant to three years' probation. Defendant timely appealed.

¶ 25    On appeal, defendant contends that the trial court erred in denying his motion to suppress, because the evidence was the product of Covelli's abuse of the grand jury's subpoena power.

Defendant argues that Covelli did not act as an agent of the grand jury but ignored it and acted in concert with the State's Attorney. He maintains that, because these tactics subverted the grand jury process, he did not have to show prejudice; alternatively, he contends that he was prejudiced because the improprieties led to the search of his home, which implicated his fourth amendment and privacy rights.

¶ 26 Because the resolution of defendant's claim of error does not involve any disputed facts and turns on the ultimate issue of whether suppression was legally proper, our review is *de novo*. See *People v. Slater*, 228 Ill. 2d 137, 149 (2008).

¶ 27 The pertinent case law is limited and does not address a situation quite similar to this one. In *DeLaire*, the grand jury subpoenaed "message unit detail" documents (MUD records) that disclosed telephone calls to and from two suspects who were later charged with unlawful gambling activities. The MUD records were somehow diverted to a police detective who had never been made an investigator or agent for the grand jury. He used the MUD records obtained by the first six subpoenas to support a complaint for a search warrant; the search, which disclosed evidence that led to the indictments, was conducted before the grand jury sessions started. A seventh subpoena was issued after the indictments and commanded an appearance before the grand jury. The State's Attorney had a standard practice of obtaining a court order at the beginning of every grand jury session permitting him to obtain subpoenas without the grand jury's specific authorization. *DeLaire*, 240 Ill. App. 3d at 1016-19.

¶ 28 The defendants moved to suppress the evidence, contending that the search warrant was obtained through the detective's unauthorized use of the subpoenaed MUD records. The trial court granted the motion. It held that (1) the defendants had a constitutionally protected privacy interest in the MUD records, (2) the grand jury properly subpoenaed the records, (3) the records were illegally diverted to the detective, and (4) the seventh subpoena was improper because it had been issued after the defendants had been indicted and the grand jury had finished its investigation. The State appealed. *Id.* at 1019.

¶ 29 This court affirmed. Addressing the detective's use of the MUD records to obtain the search warrant, we agreed with the trial court that the defendants had a reasonable expectation of privacy in the records. *Id.* at 1020. We also agreed with the trial court that the grand jury properly subpoenaed the records, because the modest intrusion on the defendants' privacy was justified by the relevance of the records and the specificity of the demand. *Id.* at 1021-22.

¶ 30 We then turned to the first of the two core issues on appeal: whether the trial court properly suppressed the evidence that was seized per the search warrant. To provide the answer, we had to decide whether the detective's diversion and use of the subpoenaed documents had been illegal. We noted that the grand jury must remain independent and thus must operate in secrecy. *Id.* at 1023. Therefore, with limited exceptions, the State's Attorney may not disclose grand jury matters and may not use the grand jury as his own compulsory administrative process. *Id.* In *DeLaire*, the original subpoena was a valid exercise of the grand jury's powers. However, we held, the diversion of the records to the detective was improper.

¶ 31 In explaining our holding, we observed first that, as the State conceded, the detective had not been performing any of the duties of either the grand jury or the State's Attorney. *Id.* at 1024. Under section 112-6(c)(2) of the Code (Ill. Rev. Stat. 1989, ch. 38, ¶ 112-6(c)(2) (now 725 ILCS 5/112-6(c)(2) (West 2014))), any person to whom grand jury matters are disclosed shall not use them for any purpose other than assisting the State's Attorney in his duty to enforce state law. *DeLaire*, 240 Ill. App. 3d at 1024. The detective's investigation had gone far

beyond that purpose and showed that he had not been acting as an investigator for either the State's Attorney or the grand jury. *Id.* at 1025. Therefore, the contents of the MUD records could not legally be disclosed to him. *Id.* As a result of the illegality, he had secured information in which the defendants had an expectation of privacy, and he had used it to obtain a search warrant that also implicated their constitutional rights. *Id.* at 1025-26. In essence, "[t]he police circumvented the fourth amendment by diverting private records from the secret grand jury." *Id.* at 1026.[2]

¶ 32    In *People v. Wilson*, 164 Ill. 2d 436 (1994), our supreme court held that the State had abused the grand jury's subpoena power but the defendant was entitled to no relief. There, the State's Attorney served a subpoena on a county agency for the defendant's mental-health records. The subpoena had been prepared at the direction of the State's Attorney (not the grand jury); was made returnable to him; and, according to him, was issued " 'in anticipation of the grand jury's consideration of matters under investigation.' " *Id.* at 457. The grand jury never saw the records. *Id.* The defendant moved before trial to bar the use of the records at trial, but the trial court denied the motion. *Id.*

¶ 33    The supreme court affirmed. It first held that, although the State's Attorney had had the separate power to subpoena documents (see Ill. Rev. Stat. 1991, ch. 38, ¶ 155-2), any such subpoena had to be made returnable to the trial court, which could then decide whether to grant him access to the documents. *Wilson*, 164 Ill. 2d at 458. In *Wilson*, the State's Attorney had misused the grand jury process by substituting his subpoena authority for that of the grand jury and by failing to make the documents returnable to the grand jury. *Id.*

¶ 34    The court held, however, that the defendant was entitled to no relief for the impropriety. It explained that, had the proper procedures been followed, the State's Attorney could still have received the documents from the grand jury. Thus, the defendant had suffered no prejudice. *Id.*

¶ 35    In *1996 Term Grand Jury*, 283 Ill. App. 3d 883, the Fourth District criticized our decision in *DeLaire* and stated that it should be limited to its facts. There, the grand jury issued a subpoena to compel the defendant to appear and provide handwriting exemplars, fingerprints, and photographs of herself. *Id.* at 885. She moved to quash it, alleging that a police detective had asked her to provide the same items but she had refused. *Id.* At a hearing on the motion, an assistant State's Attorney told the court that the detective and other investigators had believed that the case was appropriate for the grand jury to investigate, that the grand jury needed more information to further that investigation, that only after the grand jury heard evidence did it issue the subpoena, and that the evidence had shown the individualized suspicion that had satisfied the grand jury of the need to issue the subpoena. *Id.* The court denied the motion. *Id.* at 886.

¶ 36    In affirming, the Fourth District held first that " 'individualized suspicion and relevance' " had been shown (*id.* at 890 (citing *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 393-94 (1992))). It then turned to the defendant's argument that the detective had improperly used the grand jury's subpoena power to further his independent investigation.

---

[2]We also agreed with the trial court that the seventh subpoena had been improperly issued after the defendants had been indicted and the grand jury had finished its investigation. It amounted to an unauthorized use of the grand jury's power for discovery in a criminal case. *DeLaire*, 240 Ill. App. 3d at 1029-30. The present case does not raise a similar concern.

¶ 37    The court expressed uncertainty as to what we had meant in *DeLaire* (and later in *In re Rende*, 262 Ill. App. 3d 464, 472-73 (1993)) by our statement that the grand jury's subpoena power may not be "used as a means simply to further an independent police investigation." (Internal quotation marks omitted.) *1996 Term Grand Jury*, 283 Ill. App. 3d at 891 (quoting *Rende*, 262 Ill. App. 3d at 472, citing *DeLaire*, 240 Ill. App. 3d at 1022-23). Noting that the grand jury generally works in concert with the police to investigate criminal behavior, and that the State's Attorney as the county's chief law-enforcement officer coordinates the work of both groups (*id.*), the court saw no grounds for our concern in *DeLaire* and *Rende*. It stated that those opinions "should be limited to the factual contexts in which they arose: *post-indictment* use of a grand jury subpoena *duces tecum* to obtain material that the State should obtain—if obtainable at all—through formal discovery procedures." (Emphasis in original.) *Id.* at 893. The court then held that there had been nothing improper about the detective's actions; he had not engaged in an independent investigation but had informed the State's Attorney and the grand jury of his investigation so that an information or indictment could be duly obtained.

¶ 38    While we agree with the result in *1996 Term Grand Jury*, we see problems in its treatment of *DeLaire*. First, the two cases were easily distinguishable. In *DeLaire*, documents that the grand jury had duly subpoenaed were illegally disclosed to a police detective who had never been authorized to act on behalf of the grand jury or the State's Attorney. In *1996 Term Grand Jury*, the detective conducted a proper police investigation, *then* turned to the grand jury, which obtained information properly and used it according to law to indict the defendant. There was no illegal diversion of any document, or any other statutory violation. The cases involved vastly different facts and there was no need to limit the former opinion to its facts.

¶ 39    Second, the Fourth District misread *DeLaire*. Although we ruled that the postindictment subpoena had been unauthorized, we *also* held that the information that the grand jury had obtained by the six *preindictment* subpoenas was illegally diverted to the detective and used to obtain search warrants, thus tainting the searches and their fruits. The *1996 Term Grand Jury* court simply left out this part of our opinion.

¶ 40    With due respect to the Fourth District, we see no reason to depart from our holding in *DeLaire* or the reasoning on which it was based.

¶ 41    In *People v. Feldmeier*, 286 Ill. App. 3d 602 (1997), we agreed with the defendant that the misuse of the grand jury's subpoena power supported the trial court's suppression of his financial and bank records, in which he had a protected privacy interest under the state constitution. *Id.* at 603. The crucial consideration was that the State's Attorney had obtained the records via subpoenas that were made returnable to an assistant State's Attorney and not to the grand jury. *Id.* at 602-03. We cited *Wilson* for the rule that, although the State's Attorney's office can subpoena documents, the subpoenas must be made returnable to the court so that it may prevent the State's Attorney's office from obtaining records that, for various possible reasons, it should not receive. *Id.* at 603. Further, we noted that the subpoenas had not been within the grand jury's power to issue, because the assistant State's Attorney had never been made an investigator or agent of the grand jury. *Id.* at 604. Thus, we reiterated our warning in *DeLaire* that "the grand jury's subpoena power may not be used to further independent investigations by the police *or* the prosecutor." (Emphasis in original.) *Id.*

¶ 42    In *People v. Boston*, 2016 IL 118661, in a prosecution for first-degree murder, an assistant State's Attorney sought a subpoena from the grand jury for prison officials to take the defendant's palm prints and fingerprints (he was serving a life sentence on a separate

conviction). The subpoena stated that it was returnable either to the assistant State's Attorney or to the investigator who was serving it as an agent of the grand jury. *Id.* ¶ 5. A police sergeant and a detective served the defendant with the subpoena, a prison employee took his palm prints and fingerprints, and the State delivered the prints to the state police crime laboratory. *Id.* ¶ 6. Later, the detective secured a search warrant by which he obtained a sample of the defendant's DNA; a test conducted at the request of the police showed that it matched DNA from a semen sample taken from the victim's body. *Id.* ¶ 7. Next, the police sergeant appeared before the grand jury and testified about the DNA test result and a palm print, which matched one found at the crime scene. The grand jury indicted the defendant. *Id.* ¶ 8.

¶ 43    The defendant moved to quash the subpoena and suppress the palm print evidence, contending that the State had improperly used the subpoena to supplement a police investigation and failed to return the fingerprint card to the grand jury. *Id.* ¶ 9. The trial court denied the motion, ruling that the defendant had not shown prejudice. *Id.* ¶ 10. The defendant was convicted, the appellate court affirmed, and he appealed to the supreme court. *Id.* ¶¶ 12-14.

¶ 44    The court agreed with the defendant that there had been improprieties. The subpoena had been prepared at the direction of the State's Attorney's office, not the grand jury, and it had improperly been made returnable to either the assistant State's Attorney or the investigator who served it, neither of whom was an agent of the grand jury. *Id.* ¶ 40. However, the court concluded that the defendant could obtain no relief, as he had not shown prejudice: had the prints been returned to the grand jury, the State could still have obtained the evidence and sent it to the crime lab to test. *Id.* ¶ 41; see 725 ILCS 5/112-6(c)(1) (West 2012).

¶ 45    Last, we note *People v. Bauer*, 402 Ill. App. 3d 1149 (2010). There, the grand jury duly issued a subpoena to a hospital for the results of the blood-alcohol test that the defendant took after being in a traffic accident. The hospital sent documents to the State's Attorney, who reviewed them without recognizing them as grand jury material; at his request, the grand jury released them for his review. *Id.* at 1151-52. The documents stated that no blood test had been performed, so, at the State's Attorney's request, the grand jury issued a second subpoena to the hospital, and the same sequence of events occurred as the first time. *Id.* at 1152. The grand jury heard evidence from the arresting officer about the defendant's blood-alcohol test, and it indicted the defendant for aggravated driving under the influence of alcohol (DUI). *Id.* The defendant moved to suppress the test results, contending that the State had improperly used the grand jury's subpoena power to acquire them. The trial court denied the motion, and the defendant was convicted of misdemeanor DUI. *Id.* at 1152-54.

¶ 46    The appellate court affirmed. The court noted first that the subpoenas had properly been made returnable to the grand jury and that the State's Attorney, after receiving the documents because the hospital had mistakenly sent them to him, promptly informed the grand jury of the irregularity and received its permission to review them. Thus, the State had not abused the grand jury's subpoena power. *Id.* at 1156-57. The court reasoned further that any impropriety had not prejudiced the defendant: had the proper procedures been strictly followed, the State's Attorney could still have received the documents from the grand jury. *Id.* at 1157.

¶ 47    We now apply the foregoing case law to the facts at hand. This case does not fit into the mold of any previous opinion. Nonetheless, the opinions set out applicable principles to be considered.

¶ 48    One potentially crucial distinction between this case on the one hand and *DeLaire*, *Wilson*, *Feldmeier*, and *Boston* on the other is that here the person who issued the subpoena and to whom it was returnable was an agent of the grand jury. Defendant acknowledges that the trial court appointed Covelli as a grand jury investigator for the time pertinent here. He maintains, however, that Covelli's "*pro forma*" appointment—one of 488 made simultaneously—was the full extent of his interaction with the grand jury and that, in reality, he used his position to conduct an independent investigation from which the grand jury was excluded, in violation of our opinion in *DeLaire*.

¶ 49    The State responds that the trial court authorized Covelli to undertake the actions of which defendant complains. The State notes that the court's order explicitly stated that the grand jury had petitioned to appoint the 488 officers as investigators and that the investigators "ha[d] been authorized by the Grand Jury and [were] authorized by the court to issue subpoenas for investigative matters to be heard by the Lake County Grand Jury, to receive materials and documents pursuant to those subpoenas, and to provide those documents to the State's Attorney or his Assistants for enforcement of the laws of the State of Illinois." The State also contends that nothing required Covelli to obtain the grand jury's approval before issuing a subpoena.

¶ 50    We do not fully agree with either party. We disagree with defendant's contention (as we understand it) that Covelli's appointment was *per se* ineffective or a mere ruse to circumvent legal restrictions on the power of the police and the State's Attorney. We do agree with defendant that the irregularities in Covelli's exercise of his authority were substantial and, collectively, amounted to an improper end-run around the protections that courts have recognized. Nonetheless, we hold that, given defendant's burden to demonstrate prejudice, the trial court properly denied him relief.

¶ 51    The grand jury's petition was based on section 112-5(b) of the Code, under which the trial court may appoint an investigator or investigators "on petition showing good cause for same and signed by the foreman and 8 other grand jurors. The duties and tenure of appointment of such investigator or investigators shall be determined by the court." 725 ILCS 5/112-5(b) (West 2014). Defendant does not contend directly that the petition failed to show "good cause" for the appointments requested. Although he appears to imply that good cause was not shown to appoint as many investigators as requested, he does not rely on section 112-5(b) or cite any authority to support a contention that the petition was defective on this ground. He also does not contend that the petition failed to show good cause to appoint Covelli specifically. Thus, we shall not address any potential argument that the appointment was invalid or ineffective for failing to comply with section 112-5(b). See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *Lopez v. Northwestern Memorial Hospital*, 375 Ill. App. 3d 637, 647-48 (2007) (arguments not raised or not sufficiently developed are forfeited). Moreover, at the trial level, defendant did not develop this specific argument either, and we shall not disturb the judgment on this new basis. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) (appellant may not obtain a reversal based on a theory not raised in the trial court).

¶ 52    If only by default then, we hold that Covelli's appointment was proper and, thus, he could act as the grand jury's agent. That fact distinguishes our case from those in which the court held that the grand jury's subpoena power had been abused in order to advance an independent investigation by the police or the State's Attorney. It does not, however, definitively demonstrate that no such abuse occurred here, even though Covelli started out as a duly

authorized agent of the grand jury. After all, a person who is *made* an agent might not thereafter *act* as one. If he does not, then allowing the State to reap the fruits of his extracurricular activities could elevate form over substance and lead to abuses of the system.

¶ 53 We note that Covelli's actions in this case as a grand jury investigator did not have very much to do with the grand jury. He admitted that, between January 7, 2014, and April 3, 2014, he had no contact with the grand jury. From the start, his investigation of defendant proceeded as though the grand jury did not exist. The chronology bears this out.

¶ 54 There was no evidence that, when Covelli first received the suspected child pornography, the grand jury was investigating defendant. Nonetheless, without informing the grand jury (or anyone in the State's Attorney's office other than a paralegal, from whom he sought only technical aid), Covelli issued the subpoena to AT&T, demanding records that contained private information about defendant. To be sure, Covelli did not need to obtain the grand jury's explicit authorization to issue the subpoena. However, as the trial court noted, the subpoena was made returnable to Covelli personally at the sheriff's department building or his e-mail address. Although the subpoena was headed "Grand Jury" and stated that Covelli was an investigator for the grand jury, it was *not* made returnable to the grand jury. Moreover, it stated that Covelli had made a complaint before the grand jury—which he had not. The inaccuracy was potentially misleading, implying that defendant was already under grand jury investigation.

¶ 55 The return and later use of the subpoena also occurred in disregard of the grand jury. That AT&T sent the documents directly to Covelli cannot be ascribed to negligence on its part (distinguishing this case from *Bauer*) but followed naturally from Covelli's instructions. The most reasonable inference is that he wanted to receive the documents first and review them, before the grand jury did. His conduct bore this inference out. After receiving the documents, Covelli did not disclose them to the grand jury. He did not do so even later on. He did not even disclose them to the State's Attorney's office, although he gave that office the physical address of the suspected offender. Further, he placed printouts of the documents into the case file, and it became known in his office (although not to the grand jury) that he was conducting an investigation (although the extent of his coworkers' knowledge is unclear from his testimony).

¶ 56 On March 5, 2014, approximately six weeks after he had received defendant's personal subscriber information from AT&T, Covelli had still not been in contact with the grand jury. However, on that date, he filled out a complaint for a warrant to search defendant's home, relying on the information from AT&T. There is no question that, without the information, the State could not have shown probable cause. Thus, the search was made possible by Covelli's actions, all of which he undertook as an agent of the grand jury but in complete isolation from it.

¶ 57 We agree with the trial court that the subpoena was defective in being made returnable to Covelli. However, that impropriety was not the only one. A police officer's use of a grand jury subpoena to launch an investigation that excludes the grand jury until after the officer has obtained materials that are impressed with a constitutionally protected privacy interest—and has used those materials to obtain a warrant to search a suspect's home (obviously another constitutionally sensitive intrusion)—raises serious problems.

¶ 58 The officer's deliberate act of making the subpoena returnable to him, combined with his subsequent refusal to transmit the documents obtained to the grand jury, amounted to an abuse of the subpoena power. The situation here is not similar to that in *DeLaire*, but it does raise

serious concerns of its own. In *DeLaire*, the subpoena process was proper, but the grand jury's disclosure of the confidential information to a police detective who was not its agent was the abuse. Here, the improprieties began earlier in the process. The subpoena itself was defective, and the handling of the confidential information that it produced was tainted by the original defect and by the subsequent disregard of the grand jury, which should have originally received the information. In substance, Covelli used the grand jury's subpoena power to conduct an independent investigation that did not end until after he had twice obtained information in which defendant had a constitutional privacy interest.

¶ 59     We must emphasize that we cannot condone the police procedure in either *DeLaire* or the present case. Although the appointment of 488 law-enforcement officers as grand jury investigators circumvented one problem raised by *DeLaire*, it did not eliminate the danger of police abuse of the grand jury's powers. The mere fact of appointment did not entitle the officers to perform their own investigations without any contact with the grand jury until the last moment, as was done here. The convenience of the mass appointment cannot be a justification for disregarding the purposes of the grand jury system and the relatively mild restraints on its investigative powers.

¶ 60     That said, however, we cannot say that defendant carried his burden to prove that the improprieties, however deliberate, prejudiced him. We note that, under *Wilson* and *Boston*, the supreme court's controlling opinions on the prejudice test, defendant's burden was high.

¶ 61     Defendant contends in part, however, that he did not need to prove prejudice, because Covelli's use of the subpoena power "completely subverted" the grand jury process. Defendant contends that, because Covelli neither consulted with the grand jury before issuing the subpoena nor had the subpoenaed documents returned to the grand jury to review, he was not truly acting as the grand jury's agent, and thus this case is distinguishable from *Boston*. (Defendant does not discuss *Wilson*.) Although we agree with defendant's major premise, we cannot accept his conclusion. He still had to show prejudice.

¶ 62     In *Boston*, the grand jury did issue the subpoena, but it was made returnable to the assistant State's Attorney, not an agent of the grand jury. Despite this impropriety, the court required the defendant to show prejudice. Here, the situation is not crucially different. Although Covelli did not consult with the grand jury before issuing the subpoena, the trial court order appointing him as an investigator authorized him to issue the subpoena, *as an agent of the grand jury*. Thus, as in *Boston*, the initial subpoena was not improper. (We have, of course, rejected any argument that the court's appointment order was otherwise ineffectual.) The problem here, as in *Boston*, was with what happened after the issuance of a valid but defective subpoena. Under these circumstances, defendant is not excused from *Boston*'s requirement to show prejudice.

¶ 63     *Wilson* also applies, as the situation here is not materially more extreme than the one there. In *Wilson*, the assistant State's Attorney who issued the subpoena was not even an agent of the grand jury as Covelli was here. Moreover, the grand jury never saw the subpoenaed documents. Yet the court, while agreeing with the defendant that the assistant State's Attorney had abused the grand jury's subpoena power (and exceeded or at least misused his own office's subpoena power), still required the defendant to show that the impropriety prejudiced him. We are bound by the supreme court's opinions in *Boston* and *Wilson*, and we see no way to distinguish them. Therefore, we do not excuse defendant from having to show prejudice.

¶ 64     A crucial corollary is that not only must defendant show prejudice, but he must do so according to the tests established in *Boston* and *Wilson*. Defendant contends that Covelli's

abuse of the subpoena power prejudiced him because Covelli used the documents to obtain defendant's private information, which, in turn, he used to obtain a warrant to search defendant's home. Defendant contends that this case is distinguishable from *Boston* and *Wilson* because, in those cases, the State used the improperly subpoenaed evidence at trial only, whereas here the State used the evidence to secure a search warrant, which affected his constitutional rights. Defendant reasons that the intrusion into his home, which was made possible only by the use of the subpoenaed documents, was a form of prejudice that was not present in *Boston* or *Wilson*.

¶ 65        We acknowledge that there is something to be said for defendant's argument: ordinarily, an illegal search cannot be saved by the argument that the State could have obtained the evidence by following the proper procedure. The evidence must still be suppressed. However, *Boston* and *Wilson* each held that evidence that was obtained by an abuse of the subpoena process, and that involved the disclosure of information in which the defendant had a constitutionally-protected privacy interest, did not need to be suppressed. The reasoning in each case was that, had the State followed the proper procedure (*i.e.*, making the subpoena returnable to the grand jury instead of the State or the police), the State could have obtained the constitutionally sensitive information. See *Boston*, 2016 IL 118661 ¶ 41; *Wilson*, 164 Ill. 2d at 458. This was also the reasoning that *Bauer* used in holding that, even had the State's Attorney abused the subpoena process, the defendant had not shown prejudice. *Bauer*, 402 Ill. App. 3d at 1157.

¶ 66        Given this standard, we cannot say that defendant has shown prejudice. Had Covelli followed the proper procedure by making the subpoena returnable to the grand jury—or even by acting as a true agent of the grand jury and immediately transmitting AT&T's records directly to that body—the State could still have obtained the information and used it to obtain the warrant to search defendant's home.

¶ 67        The grand jury did not need a pending charge against defendant or probable cause, as the purpose of the grand jury is to decide whether probable cause exists such that a charge should be brought. See *DeLaire*, 240 Ill. App. 3d at 1021. The only requirements for the information sought were "[s]ome quantum of relevance" of the information and "some showing of individualized suspicion" against the person whose information was being sought. *May 1991 Will County Grand Jury*, 152 Ill. 2d at 393; see *DeLaire*, 240 Ill. App. 3d at 1021-22. Those requirements were easily satisfied here. The subpoena demanded evidence of the physical address of a specific device from which a police detective had received images that he identified as probable child pornography. Therefore, as defendant failed to show prejudice, we hold that the trial court did not err in denying his motion to suppress.

¶ 68        For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 69        Affirmed.